[No. 26650. *En Banc.* November 18, 1937.]

BENJAMIN FRANKLIN THRIFT STORES, *Appellant,* v.
A. L. JARED, *Respondent.*[1]

[1]Reported in 73 P. (2d) 525.

*Wright, Jones & Bronson* and *Story Birdseye,* for appellant.

*Kahin & Carmody,* for respondent.

MILLARD, J.—On August 29, 1933, plaintiff corporation subleased space in a storeroom in Seattle of which plaintiff was the lessee and in which plaintiff conducted a grocery store and meat market. Under the terms of the sublease, the defendant agreed to operate a meat market in the space allotted to him for the period ending June 13, 1936. The sublessee was obligated by the contract to conduct his business under the name of "Benjamin Franklin Thrift Market," and to pay a rental of forty-five dollars monthly in advance. The parties agreed to cooperate with each other in the promotion of the business of each as carried on in the store building used by both under the lease and sublease.

It was further agreed that, if the plaintiff lessor, at any time, was of the opinion that the quality of merchandise handled by the lessee did not conform to the standards of the lessor, or that the prices charged by the lessee for merchandise were out of harmony with the sales policy of the lessor, or that the conduct of the lessee was such as to alienate the patronage enjoyed by the lessor, the lessor had the option of termination of the agreement by thirty days' written notice to the lessee of its intention so to do.

The sublease provided that the defendant should have the use of plaintiff's delivery service at thirty dollars monthly; that he could have space in plaintiff's

weekly advertising circular for twenty dollars monthly; and that his charge accounts would be handled by the plaintiff. The defendant was required to furnish refrigeration to plaintiff at $3.50 monthly, and both parties were to share the phone and light bills.

Pursuant to paragraph two of the sublease, which reads as follows, the defendant deposited forty-five dollars with the plaintiff:

"(2) The lessor hereby acknowledges the receipt of Forty-five ($45.00) Dollars to it in hand paid by the lessee as security for the faithful performance of the terms of this lease by the said lessee, and if the same is faithfully performed, the said forty-five dollars shall at the termination of this lease be refunded to said lessee or credited on the last month's rental due hereunder; but in the event that the lessee fails and refuses to pay said rental, or in any other respect violates the covenants or conditions contained in this lease, then and in such event the latter may be cancelled by the lessor, and the latter may forthwith remove all of the lessee's goods from the premises and take possession thereof, and said lessor may further retain the said sum of forty-five dollars as liquidated damages."

In the latter part of July, 1935, while the agreement described above was still in effect, the manager of the plaintiff's grocery store resigned and opened a competitive store across the street, about two hundred feet distant from the store of his former employer. In that new store, the defendant opened a meat market and announced his intention to give his personal attention thereto. He arranged to continue the operation of his meat market in the space allotted to him in the store room by plaintiff under the lease agreement between them with an employee in charge.

The new store, which consisted of a complete food and meat market, opened for business Friday, July 19, 1935. On that day and on the following day, phone orders to the defendant for meat were filled and deliv-

ered from the defendant's meat market in the new location.  On Saturday, July 20, 1935, regular notice by plaintiff was given to defendant of termination of the sublease.  Defendant occupied the premises leased to him until Monday, July 22, 1935.  Thereafter, plaintiff operated the meat market itself, being unable to obtain someone to take the defendant's place.

On the theory that it and the defendant had undertaken to operate a complete food and meat market, and that the agreement to cooperate in the promotion of one another's business was breached by the defendant, this action was instituted to recover for the loss sustained by the plaintiff as a result of defendant's breach of contract.

In its first cause of action, the plaintiff sought recovery because of the loss of grocery business as a result of the grocery trade going to the new location. In its second cause of action, the plaintiff sought to recover the loss sustained by it in the operation of the meat market after the cancellation of the defendant's lease.  In the third cause of action, the plaintiff prayed for judgment in the amount of $219.04, for rent, delivery services, advertising services, telephone, water, light, and other incidentals furnished by the plaintiff to the defendant under the terms of the sublease.

A jury was impanelled and sworn to try the cause; witnesses were called and testified in behalf of the plaintiff.  The defendant's challenge at the close of plaintiff's case to the sufficiency of the evidence to sustain any recovery was sustained and the action dismissed.  Plaintiff appeals.

It is the position of the appellant that the deposit of forty-five dollars is a penalty, and that it is entitled to a recovery of its actual damages. Respondent insists that paragraph two of the lease, quoted above, is a valid agreement for liquidated damages in

the event of breach of the lease, and that there can be no. additional recovery.

We held in *Mosler v. Woodell*, 189 Wash. 583, 66 P. (2d) 353, that whether a stipulation like that in the case at bar is a provision for liquidated damages or a penalty largely depends on the facts of the particular case. We said:

"Such a stipulation will be held to provide for liquidated damages, if the damages flowing from a breach of the contract are uncertain, difficult of proof, and the amount agreed upon is not so disproportionate to the probable damages as to be unconscionable—providing, of course, that it is reasonably clear from the contract that the parties intended to stipulate for liquidated damages and not a penalty. *Madler v. Silverstone,* 55 Wash. 159, 104 Pac. 165, 34 L. R. A. (N. S.) 1."

See, also, *Smith v. Lambert Transfer Co.,* 109 Wash. 529, 531, 187 Pac. 362; and *Wilbur v. Taylor,* 154 Wash. 282, 291, 282 Pac. 65.

It is clear that, considering the contract as a whole, the deposit of forty-five dollars was not intended to secure performance of the contract, but was a sum intended to be paid in lieu of performance; hence, the deposit of forty-five dollars is liquidated damages.

While each party agreed to cooperate in promoting the other's business, there is no provision in the lease that respondent would not open another meat market. There was no agreement to confine the business operations of either party to the store room covered by the lease. We find nothing in the contract under which the respondent is required to give his sole and personal attention to the business. It can hardly be said that the opening of another place of business by either party would be a failure to cooperate, in view of the fact that the appellant had other

grocery stores and meat markets in Seattle. Clearly, then, at the time the lease was executed, neither party contemplated that any question of damage would arise by reason of either party opening another place of business. If the respondent failed to pay the stipulated rental promptly, or breached any other provisions of the lease, appellant was privileged under paragraph two of the contract to cancel the lease. In paragraph two of the lease, appellant reserved to itself the right to retain the forty-five dollars deposited as liquidated damages for the violation of any covenant of the lease.

The open account on which appellant sought recovery was reduced from $219.04 to $181.76 by deduction of two interest payments of $15.14 each, with which respondent had been improperly charged; and seven dollars for refrigeration services, with which respondent had not been credited. It was willing that the forty-five dollars be credited on respondent's open account, thus further reducing the balance of the liquidated obligation to $136.74.

That appellant intended to exercise its option to retain the deposit of forty-five dollars, is shown by the fact that respondent was not given any credit for that deposit in the account that appellant ultimately presented against him. Only by virtue of paragraph two of the lease could appellant assert any right to retention of the forty-five dollars; that right was to appropriate the deposit of forty-five dollars only as liquidated damages. There is nothing in the lease, as stated above, prohibiting respondent from opening another meat market. It follows that the appellant could not, therefore, cancel the lease because respondent opened another meat market in a new location. If the lease was canceled because respondent did not "cooperate,"

what damages were shown under the evidence? Respondent's new market was opened July 19, 1935. On July 20, 1935, appellant gave to respondent written notice of termination of the lease. Pursuant to that notice, respondent was evicted Monday, July 27, 1935. There was no evidence that appellant lost a grocery customer or a grocery sale by reason of the opening of the second meat market. There was evidence that when appellant's manager, who had a following in the neighborhood, resigned and opened a new grocery store, "the grocery trade went with him."

The testimony is to the effect that respondent did not for the two days, July 19th and July 20th, dress his show cases to the satisfaction of appellant. Respondent filled some meat orders from his new meat market, it is true. That meat, however, belonged to him, and appellant had no interest in it. We find no evidence that appellant lost any grocery business by reason of respondent's failure to dress properly to appellant's satisfaction his show cases, or because the respondent filled some telephone orders from the stock on hand in his new market.

▪ Appellant is not entitled to recover for the loss it claims it sustained in operating a meat market in the premises from which it evicted respondent. The appellant had no share in the profits or losses of respondent's business. It was respondent's landlord, and respondent was under no duty, contractual or otherwise, to see that the market was operated profitably or at all on the premises after the termination of the lease.

▪ Was the lease canceled because of the failure of the respondent to pay one or more of the items chargeable for rent, delivery service, advertising services, telephone, water, light, and other incidentals? It

was provided when the contract was executed that the breach of any one of these covenants would entitle the appellant to cancel immediately the lease. The sum of forty-five dollars is not so disproportionate to the probable damages as to be unconscionable. The claim of appellant that, at the date of cancellation, these items amounted to $219.04 less credit for bookkeeping errors, which reduces the amount to $181.76, arises solely because the appellant permitted the defaults to accumulate. It did not take advantage of the protection afforded to it by the terms of the lease at the time the first default occurred. The total referred to was made up of items due for some months prior to the date of cancellation.

The sum of $181.76, which now appears to appellant to be disproportionate to the amount of forty-five dollars reserved by the lease, is in the amount of $181.76 only because the appellant saw fit for some time to waive its rights under the lease. If the rental of forty-five dollars were not paid promptly in advance, the lease could have been canceled and the forty-five dollars deposit retained as liquidated damages. If, after the payment of the rental of forty-five dollars, the respondent failed to pay for advertising services or to pay for the delivery services, the lease could have been canceled. The sum now appearing to appellant to be disproportionate to the amount reserved by the lease is the amount claimed only because the appellant permitted the defaults to accumulate and waived its rights under the lease.

The evidence discloses that the deposit received and retained by the appellant was reasonably sufficient to compensate it for any damage it could sustain and prove because of any of the claimed violations of the terms of the lease. The amount of forty-five dollars agreed upon is not so disproportionate to the probable

damages as to be unconscionable, and it is reasonably clear that the parties intended to stipulate for liquidated damages and not a penalty.

The judgment is affirmed.

HOLCOMB, BLAKE, GERAGHTY, and SIMPSON, JJ., concur.

MAIN, J. (dissenting in part)—I concur in the majority view as to the first and second causes of action, but I am not in accord as to the third. As I view it, the forty-five dollars specified in the contract as liquidated damages was intended to be, and in fact was, a penalty.

In 1 Pomeroy's Equity Jurisprudence (4th ed.), § 443, it is said:

"Where an agreement contains provisions for the performance or non-performance of several acts of different degrees of importance, and then a certain sum is stipulated to be paid upon a violation of any or of all such provisions, and the sum will be in some instances too large and in others too small a compensation for the injury thereby occasioned, that sum is to be treated as a penalty, and not as liquidated damages. This rule has been laid down in a somewhat different form, as follows: Where the agreement contains provisions for the performance or non-performance of acts which are not measurable by any exact pecuniary standard, and also of one or more other acts in respect of which the damages are easily ascertainable by a jury, and a certain sum is stipulated to be paid upon a violation of any or of all these provisions, such sum must be taken to be a penalty."

That same paragraph appeared in an earlier edition of the same work and was approved by this court in *Everett Land Co. v. Maney*, 16 Wash. 552, 48 Pac. 243. In my opinion, the specifications of the contract in this case bring it within that rule.

There became due, under the terms of the contract, ninety-five dollars on the first day of each month, and

it can hardly be thought that the parties intended that the forty-five dollars should operate as liquidated damages for the sum of ninety-five dollars.

In addition to this, I do not believe that the appellant should be penalized because it did not at once, when there was a default, take advantage of the forfeiture provision in the contract. To so penalize the appellant, it seems to me, would be invoking a very harsh rule.

I therefore concur with the majority as to the first and second causes of action and dissent as to the third.

STEINERT, C. J., BEALS, and ROBINSON, JJ., concur with MAIN, J.

