N. MON WAI *et al., Respondents,* v. GEORGE F. PARKS, *Respondent,* JACK T. WATKINS, *Appellant.*[1]

[1]Reported in 262 P. (2d) 196.

*Milton P. Sackmann* and *Kenneth C. Hawkins,* for appellant.

*Velikanje & Velikanje* and *John S. Moore, Jr.,* for respondents Wai.

SCHWELLENBACH, J.—April 27, 1949, Mon Wai and wife leased certain real property in Yakima to Parks and Watkins for a term of ten years, beginning not later than July 1, 1949, at an agreed rental of $405 per month, payable in advance, on or before the first day of each month. The pertinent provisions of the lease agreement are as follows:

"WHEREAS, the parties hereto desire to enter into an agreement whereby the parties of the first part will construct upon the above-described premises a parking lot and service station building, the parties jointly sharing the cost of said construction; and

"WHEREAS, the parties hereto desire to enter into an agreement for the construction of said property and the leasing of said building and premises; Now, THEREFORE,

"It is agreed and understood that in consideration of the covenants herein contained and the payments of rental hereinafter provided, that the Lessors do hereby agree to con-

struct upon the above-described real property a hard-surface asphalt parking lot to be enclosed by a six-foot cyclone fence and a concrete bumper curb of the full area, except around the entrance and service station. And in addition thereto Lessors will construct a concrete-block building and other installations which are evidenced by blue print attached to this agreement, signed by the parties hereto and made a part hereof by reference.

"Lessees have as of this date delivered to Lessors the sum of Five Thousand Dollars ($5,000.00), receipt of which is hereby acknowledged, which Lessees agree shall be applied to the cost of the construction of said parking lot; all the remaining cost and expense thereof shall be borne by Lessors, except that Lessees shall furnish and pay for the cost of installing gasoline tanks, pumps and any and all other facilities as they shall desire upon said premises. . . .

"It is agreed and understood that at the termination of this lease any and all improvements placed upon said premises shall remain thereon and shall be the property of Lessors, except that Lessees shall have the right to remove any gas pumps placed upon said premises and shall have the right to remove any fixtures or equipment together with any stock of goods and supplies placed thereon by Lessees, except the gas tanks, which may be removed without in any way damaging or injuring said premises. . . .

"It is agreed and understood that in the event Lessees shall fail, neglect or refuse to pay the rentals herein reserved and in the manner herein set forth, time being declared to be the essence of this agreement; or in the event Lessees shall fail in any other respect to carry out the terms and conditions of this agreement; . . . Lessors shall have the option to forfeit and terminate this lease and recover possession of the premises herein demised in the manner and form provided by the laws of the State of Washington now or hereafter to go into effect, but Lessors shall give thirty (30) days notice in writing of their intention to forfeit said lease, which notice may be made either personally on either of the above-named Lessees, or may be made by depositing the same in the United States mail, postage prepaid, addressed to the Lessees, or either of them at the above-described premises, *and all moneys paid by Lessees to Lessors shall be forfeited as liquidated damages to Lessors.*

"The above remedies in the case of the failure to pay rent or to perform the covenants of this contract are cumulative and shall not deprive Lessees of the right to use any statutory remedies available to them. . . .

"In the event suit or action is instituted to enforce any of the terms or conditions of this agreement, or to regain possession of the same or any part thereof, the prevailing party in such suit or action shall be entitled to reasonable attorneys' fees to be determined by the court. . . ." (Italics ours.)

The lessees took possession July 1, 1949.

July 22, 1949, Parks sold his interest to Watkins. By the terms of a written instrument executed by the parties, Watkins assumed and agreed to pay, and in all particulars to perform, the rentals, terms and conditions of the Mon Wai lease.

Watkins continued in possession and paid the rentals up to September 1, 1951. However, he did not pay the rentals due September 1, 1951, October 1, 1951, and November 1, 1951.

November 5, 1951, Mon Wai served notice on Parks and Watkins that they had failed to make the three payments above mentioned, in the total amount of $1,215, and notified them that unless the payments were brought to date within thirty days the lease would be forfeited and terminated.

November 7, 1951, Parks and Watkins surrendered the property to Mon Wai, and delivered possession and the keys to him.

March 7, 1952, Mon Wai and wife commenced this action against Parks and Watkins for the unpaid rent. Parks answered, setting up the agreement between himself and Watkins and praying that, in the event judgment be entered against him, he have and recover judgment over against Watkins in the full amount, together with an attorney's fee of $150. Watkins answered, alleging that the lease was terminated and rescinded prior to the institution of the action and that there was no valid and binding agreement in existence at that time.

The trial court entered judgment against Parks and Watkins, and each of them, in the amount of $1,215, plus interest and costs, and an attorney's fee of $250. The court also, as part of the same judgment, awarded judgment in the amount of $1,465 to Parks over and against Watkins, together with an attorney's fee of $150. Watkins alone is appealing.

Appellant assigns error in the making of certain findings of fact; in awarding judgment against Parks and Watkins; in awarding judgment over to Parks; and in allowing attorney's fees to Parks.

Unless there is a stipulation in the lease agreement providing for liquidated damages in case of default, upon forfeiture of a lease for failure to pay rent the lessor may recover all rent due at the time the forfeiture was declared. *Kelley v. von Herberg,* 184 Wash. 165, 50 P. (2d) 23.

We have held that, where a certain sum is paid to the lessor by the lessee to be held until the end of the term, and it is agreed between the parties that, either in the event of nonpayment of rent payable at the times specified or of default of any of the covenants contained in the lease, the lessor may cancel the lease and the sum paid to the lessor shall be forfeited as liquidated damages, such agreement is binding provided the amount agreed upon as liquidated damages is reasonable. *Smith v. Lambert Transfer Co.,* 109 Wash. 529, 187 Pac. 362; *Pacific & Puget Sound Bottling Co. v. Clithero,* 162 Wash. 156, 298 Pac. 316; *Benjamin Franklin Thrift Stores v. Jared,* 192 Wash. 252, 73 P. (2d) 525.

There is no difference, so far as damages are concerned, between a breach of a covenant to pay rent and a breach of any other covenant in the lease. In *Pacific & Puget Sound Bottling Co. v. Clithero, supra,* we said:

"The first paragraph of the lease above quoted provides that in consideration of the sum of two thousand dollars and the performance of the other covenants by the lessee, the premises are leased and demised. In the last paragraph quoted, the two thousand dollars first mentioned is specifically referred to as having been deposited as liquidated damages. It is there said that the two thousand dollars so deposited shall be forfeited as liquidated damages on account of the 'breach or default' of the lessee. The question then arises whether the breach and default there referred to includes a breach or default in the covenant to pay rent.

"The clause in the fore part of the sentence, 'if the rent shall be due and unpaid,' bears exactly the same relation to the latter part of the sentence covering liquidated damages on account of breach or default as does the clause, '(if) default shall be made in any of the conditions or covenants

herein contained.' If the liquidated damages specified covers one clause, it would seem to necessarily follow that it covers the other. While it is true that the two thousand dollars, when first mentioned in the lease, was referred to as a consideration therefor, its status as liquidated damages was definitely fixed in the last paragraph.''

■ Even though no money has been deposited, if the parties to a contract stipulate that, in the event of a breach, one of the parties shall pay to the other a specific sum as stipulated damages, such an agreement is valid, the theory being that the parties have agreed, or have stipulated, as to the amount of damage. *Herberger v. Orr Co.*, 62 Wash. 526, 114 Pac. 178. In each instance, the intention of the parties is controlling. 52 C.J.S. 213, Landlord and Tenant, § 472 b.

2 Bouvier's Law Dictionary, 2023 (3rd Rev.), defines liquidated damages:

"Damages the amount of which has been determined by anticipatory agreement between the parties.

"Damages for a specific sum stipulated or agreed upon as part of a contract, as the amount to be paid to a party who alleges and proves a breach of it."

It will thus be seen that, where liquidated damages are provided for, a particular amount has been agreed upon between the parties to be paid in case of a breach. Ordinarily in lease agreements the lessee has paid a certain sum to the lessor, and that particular sum is earmarked as the amount to be retained in the event of a default by the lessee. However, in executory contracts for the sale of real property, it is often provided that, in case of default, the seller may forfeit the contract and retain, as liquidated damages, all sums theretofore paid by the purchaser.

Counsel have not furnished us, nor has our search revealed, a case such as this, wherein the lease agreement provided, "and all moneys paid by Lessees to Lessors shall be forfeited as liquidated damages to Lessors." Appellant insists that the above clause must have referred to the $5,000 paid at the time of the execution of the lease. We are satisfied that the $5,000 was the lessees' contribution to the cost of the construction of the parking lot, the cost of which was to be shared jointly by the parties.

Although, as stated above, we have found no case holding that "all moneys paid by Lessees shall be forfeited as liquidated damages," we see no reason why the parties may not so contract if they desire to do so. When the parties to this lease agreement contracted, the lessees contributed $5,000 as their share of the cost of the construction of the parking lot. At the expiration of the term, which was to run ten years, the improvements would belong to the lessor. No testimony was given as to the intention of the parties, and that intention must be gained from the language which they themselves used.

It could very well be that the parties, realizing that the lessees were contributing $5,000 toward the construction of a service station which they were to occupy for ten years and which would then belong to the lessor, considered the fact that at some time during the term of the lease (here it was two and one-half years), lessees might default, thus giving the lessor the right to terminate the lease. It would be a fair interpretation of the agreement that the parties stipulated that, in such an event, considering the fact that the time of the full ownership of the property in the lessor would thus be accelerated, the only damages to which the lessor would be entitled because of the default of the lessees, would be the moneys which they had already paid to him.

Counsel for respondents stated, in oral argument at the Departmental hearing, that the liquidated damage provision was merely "thrown in" in order to be overly cautious. At the *En Banc* hearing he stated that the including of that provision was inadvertent and was therefore superfluous. Nevertheless, it is there, and respondents are bound by it. It should be noted that the provisions in the lease concerning forfeiture and liquidated damages are both included in one paragraph, consisting of one sentence. There is no question but that the lease was drawn by respondents' counsel. Where a lease is capable of more than one construction, the courts will adopt that construction most favorable to the lessee. *Anderson v. Ferguson,* 17 Wn. (2d) 262, 135 P. (2d) 302, and cases cited. See, also, *Dorsey v. Strand,* 21 Wn. (2d) 217, 150 P. (2d) 702.

■ We are of the opinion that the parties, by agreement, limited respondents' damages, in case of their termination of the lease and recovery of possession because of the failure of the lessees to pay the rentals when due, to the moneys theretofore paid by lessees to respondents.

■ Parks is not appealing the judgment against him. Subsequent to the entry of the judgment, and after Watkins' appeal had been commenced, respondents executed on sufficient of Parks' property to cover the full amount of the judgment, plus interest, costs, and attorneys' fees. They then satisfied of record the judgment against Parks and Watkins. Respondents move this court to dismiss the appeal because the question is now moot, relying upon *National School Studios v. Superior School Photo Service,* 40 Wn. (2d) 263, 242 P. (2d) 756; *Pacific Savings & Loan Ass'n v. Smith,* 121 Wash. 595, 209 Pac. 1086, 212 Pac. 582; *Lewis-Pacific Dairymen's Ass'n v. Frame,* 126 Wash. 493, 218 Pac. 385. Those cases are not in point as to the issues now before us. Neither is RCW 4.88.040, relied upon by respondent. The motion to dismiss the appeal is denied.

The judgment appealed from is reversed.

MALLERY, HAMLEY, DONWORTH, and FINLEY, JJ., concur.

GRADY, C. J. (dissenting)—This case is an illustration of how a very plain and simple business transaction may by a process of reasoning and construction of a contract become complicated and confusing in an effort to avoid the payment of an honest debt. The defense to the action for unpaid rent and the arguments made in its support fall within the category known to trial lawyers as the "cuttlefish" defense or argument—one whereby the debtor so darkens the legal waters that he may confuse the pursuing creditor and thus escape his obligation.

The contract between the parties had a twofold but severable aspect. In one part, Parks and Watkins agreed to and did pay to Wai a sum of money to defray a part of the cost of making improvements upon the property being leased by them. The other part of the contract was a lease of the property for a term of years with a monthly rent reserved.

The lease contained the usual provision that, if rent was not paid, the lessor had the option to terminate it and recover possession of the property. The party who prepared the contract-lease added to the latter provision the words "and all moneys paid by lessees to lessors shall be forfeited as liquidated damages to lessors." It is these words that furnish the loophole through which Watkins hopes to escape and avoid his debt. The trial judge grasped the situation, saw through the fallacy of the contention that the words "all moneys paid" had reference to either the five thousand dollars paid for improvements or to the earned installments of rent and declined to be led into a legal cul-de-sac. It seems to me that the quoted words have reference to covenants in the lease and have no relation to the executed part of the contract for the improvements or the five thousand dollars contributed to the cost thereof. However, if we consider the contract-lease in its entirety, construe it most strongly against the lessor who prepared it, give effect to each and every term and provision thereof, and allocate the liquidated damage clause to both the item of five thousand dollars and the rent that had accrued and been paid up to the time of the breach of the lease as is done in the majority opinion, we must then determine whether such sums of money fall within the liquidated damage clause and constitute "all moneys paid by lessees to lessors" and that such sums of money or either of them stand in lieu of unpaid rental which the lessors seek to collect in an action to forfeit and terminate the lease.

In argument, counsel for the lessor who prepared the contract explained that the liquidated damage provision was merely "thrown in" in order to be overly cautious. Whether a liquidated damage clause in a contract can serve any purpose depends upon the remedy a party to it may seek, but in order to be of any use there must be something to which it may be applied, such as a sum of money paid or deposited when the contract is made, or a provision in the contract fixing an amount to be paid in case a damage is sustained. In real-estate contracts and leases, a liquidated damage

clause may have a twofold objective. Such a provision avoids the necessity of returning money paid on the purchase price or for rental when rescission is sought and is secured. Forfeiture is sometimes confused with rescission, but the two are not the same. In either case, the contract is terminated and at an end, but in the case of forfeiture the contractual clause therefor is enforced and further performance of the contract ended, while in the case of rescission the contract is set aside and annulled and is the same as though it never existed. In the former case, the vendor or lessor has the right to keep the money that has been paid on the purchase price or for rent without any affirmative provision in the contract authorizing him so to do, but in the case of rescission each party must be placed in *statu quo* in so far as is possible, and this includes the return of the moneys paid on the purchase price or for rental.

A vendor or lessor may be damaged if the covenant to pay the installments of purchase price or rent are breached by nonpayment and he takes the property back. The loss of his bargain may be a damage, or the property itself may have been injured by the vendee or lessee. The amount of such damages may be difficult of proof to satisfy the requirements of the law on that subject. If the vendor or lessor is fortified by a liquidated damage clause and resorts either to the remedy of rescission or the enforcement of the contract or lease, moneys paid may be retained in lieu of the amount of his actual damage.

Mon Wai sought enforcement of his lease in two instances —recovery of unpaid rent and termination of the lease. He did not make any claim for damages; he did not seek rescission of the lease. In the enforcement of the two covenants of the lease, he had no use for the liquidated damage clause, and neither did the lessees. It is an anomaly indeed to say in a case of this kind that installments of rent a lessee has paid or what he has contributed to the improvement of the leased property as part of the consideration for the lease, stand as liquidated damages in lieu of accrued and unpaid rental installments. This becomes apparent when we com-

pare the case now under consideration with such cases cited in the majority opinion as *Smith v. Lambert Transfer Co.,* 109 Wash. 529, 187 Pac. 362; *Pacific & Puget Sound Bottling Co. v. Clithero,* 162 Wash. 156, 298 Pac. 316; and *Benjamin Franklin Thrift Stores v. Jared,* 192 Wash. 252, 73 P. (2d) 525.

The *Smith* case falls within the class where a lease provides for a total sum of rental to be paid and payment of a substantial sum is made to apply upon the last installment, and it is stipulated that such sum shall constitute liquidated damages in case of forfeiture of the lease. The principal question before the court in that case was whether the sum of five thousand dollars paid was a penalty, but treating it as liquidated damages the court, quoting from *Barrett v. Monro,* 69 Wash. 229, 124 Pac. 369, pointed out that a loss of the tenancy might cause damages to the lessor difficult of ascertainment in the event of lessee's default in payment of rent and a termination of the lease by the lessor. In such a case, the money paid would cover such damages.

In the *Clithero* case, a part of the consideration for the lease was a deposit with and a payment to the lessor of two thousand dollars. The lease provided that, in the event there was a default in the payment of rent or in any of the conditions or covenants of the lease, this sum should be forfeited as liquidated damages. The lessee defaulted in the payment of a considerable amount of rent; an unlawful detainer action was commenced in which it was sought to recover double the amount of rent due and possession of the premises. It was decided that the deposit covered the unpaid rent.

In the *Jared* case, a sublessee deposited forty-five dollars with the sublessor, and it was provided that, if the lessee performed the terms of the lease, the forty-five dollars should either be refunded at the termination of the lease or credited on the last month's rental. It was further provided that if the lessee failed to pay rental, the lease might be canceled and the forty-five dollars retained as liquidated damages.

In the case before us, the lessees made no deposit with the lessor to be retained in lieu of unpaid rental installments. There was no fixed sum agreed upon that the lessees agreed to pay in the event they defaulted in the payment of rent. The item of five thousand dollars was not any such kind of a deposit. It was no different than if the lessees had paid the money direct to the one who made the improvements on the property.

The cases above referred to and some of those cited in the opinion discuss the subject of liquidated damages, and from them one should conclude that neither the item of five thousand dollars nor the accrued and paid rentals constituted "moneys paid by lessees to lessors," which would constitute liquidated damages.

The judgment in favor of N. Mon Wai should be affirmed.

HILL, WEAVER, and OLSON, JJ. (dissenting)—We concur in the dissent of the Chief Justice, except as to the opening paragraph.