[No. 39781.    Department Two.    November 13, 1969.]

VIRGIL J. PAGUE, *Respondent,* v. PETROLEUM PRODUCTS, INC.,
*Appellant.**

*Donald R. Douglas,* for appellant.

*Lycette, Diamond & Sylvester,* by *Lyle L. Iversen,* for
respondent.

NEILL, J.—Plaintiff landlord brings an action for rents
accrued under a lease. Defendant tenant (assignee of orig-

*Reported in 461 P.2d 317.

inal lessee) appeals from a judgment awarding plaintiff the full rentals, contending (1) that there had been a constructive eviction; (2) that he had surrendered the premises and plaintiff has accepted such surrender; and (3) that any liability for rentals is limited to $850 by the terms of a liquidated damages provision of the lease.

No error is assigned to the trial court's findings of fact and they are accepted as the verities on this appeal. *Riley v. Rhay*, 76 Wn.2d 32, 454 P.2d 820 (1969). From these findings and the supporting record, the following relevant facts emerge.

The plaintiff leased gasoline service station premises in Seattle to Harris Petroleum Co. The lease was executed in March of 1957 for a term of 10 years, with rental of $425 per month reserved. The lease agreement acknowledged a deposit of $850

> as security for the faithful performance by Lessee of all the terms and conditions of this lease . . . which deposit shall be applied upon the last two (2) months rental [if the lessee performs, or] . . . shall be retained by Lessor as liquidated damages in the event Lessee fails to so perform.

In September of 1962, by assignment and with the lessor's consent, defendant succeeded to the position of tenant under this lease agreement.

In 1959, 3 years before defendant became the tenant, Harris Petroleum had complained to plaintiff that automobiles of plaintiff's adjacent used car lot were being parked in such manner as to interfere with access to the service station. No further complaints appear to have been made by either Harris Petroleum or defendant, and each respective tenant continued to pay the reserved rent and occupy the premises until they were vacated and abandoned by defendant. Customer access to the service station has been continuously available.

When station operations proved to be unprofitable, defendant investigated the possibility of remodeling, but this proved to be impracticable. Then, in November of 1964, defendant informed plaintiff that it was "cancelling" the

lease. One reason advanced for this was that the premises were no longer suitable for use as a gasoline station. As an explanation, or as a separate reason for vacating, defendant stated that businesses which had been located on adjoining property when the lease term commenced were no longer in operation. (We observe from the record that these other businesses had left *before* defendant took the lease assignment from Harris Petroleum and that this was known to defendant at that time.)

Plaintiff responded through his attorneys in a letter dated November 16, 1964: "Notice is hereby given that the lessor will insist upon the terms of the. lease and does not concur in the cancellation attempted by Petroleum Products." This intent to insist upon the tenant's performance is further reflected in subsequent letters of December 11, 1964, ("Mr. Pague does not recognize your right to terminate the lease.") and January 4, 1965 ("Mr. Pague is insisting upon your carrying out this lease."). There was neither vagueness nor equivocation in plaintiff's expressions of intent.

Following defendant's abandonment of the premises, plaintiff made reasonable and good-faith attempts to rerent or sell the premises, but without avail. During that time, plaintiff did park some of the automobiles from the adjacent used car lot upon a portion of the premises, but neither the duration, the extent, nor the value of this use was established by evidence.

Upon these facts, the trial court concluded that a lease existed between plaintiff and defendant; that the landlord had made a good-faith attempt to rerent the premises; and that accrued rental to the time of the trial was due in the sum of $11,475, plus interest. Judgment was entered accordingly.

▪ The facts do not support the defendant's contention that it was evicted. In order for a vacating tenant to claim constructive eviction, it is essential that he give the landlord notice of the act or condition complained of and an opportunity to remove or correct the condition. *California Bldg. Co. v. Drury,* 103 Wash. 577, 175 P. 302 (1918); *Erickson v.*

*Elliott,* 177 Wash. 229, 31 P.2d 506 (1934). Further, there is no eviction where, as here, the only complaint was made long before the vacating of the premises and the tenant has continued in occupancy and to pay rent without further or continuing complaint. *California Bldg. Co. v. Drury, supra.* The record reveals only a single instance of complaint to the landlord, and this was not by the defendant, but by his predecessor. It was made 3 years before the assignment and 5 years before defendant abandoned the premises.

Defendant next contends that its abandonment was transformed into a surrender and acceptance by the landlord's subsequent use of the premises in connection with his used car operation, or, in the alternative, that the reasonable value of this use should be credited against the amount due for rentals.

When a tenant has wrongfully abandoned his leasehold, he cannot thereafter designate any subsequent occupation or control of the premises by his landlord as a surrender and acceptance. In such cases, the subsequent use by the landlord must be substantial enough to evidence a reappropriation of the premises and an intent on his part to foreclose any future rights of the tenant in the premises. There is no evidence to establish the duration, extent or value of the landlord's subsequent use of the premises. This failure to produce evidence on value, duration and extent is fatal to the defendant's contention. The burden is on the party claiming credit to put in evidence as to amount. The tenant failed so to do.

Defendant's final contention is that, in any event, the amount recoverable by the plaintiff is limited to $850 by the terms of the lease agreement. The relevant provisions read:

> The Lessee has paid to and the Lessor acknowledges receipt of the sum of Eight Hundred and Fifty Dollars ($850.00) as security for the faithful performance by Lessee of all the terms and conditions of this lease to be performed by Lessee, which deposit shall be applied upon the last two (2) months rental of the aforesaid term in the event of such performance by the Lessee; and which

deposit shall be retained by Lessor as liquidated damages in the event Lessee fails to so perform.

. . .

If the Lessee shall fail to keep and perform any of the covenants and agreements herein contained, then Lessor may cancel this lease upon giving the notice required by law and re-enter said premises, retaining the sum deposited as security herewith as liquidated damages.

For present purposes, it will be assumed that the above language constitutes a liquidated damages clause.

We first observe that a landlord is not ordinarily precluded from his right to rentals reserved under a lease by the tenant's act of wrongful abandonment. As we observed in the case of *Brown v. Hayes,* 92 Wash. 300, 302, 159 P. 89 (1916):

[W]hen a tenant abandons the premises without just cause and refuses to pay rent, the landlord may either treat the term as still subsisting and sue for the installments of rent reserved as they accrue; or, treating the lease as terminated by the tenant's breach, reenter and sue for damages for the breach.

*Accord,* 3A Thompson, Real Property § 1306 (1959).

■ Wrongful abandonment by a tenant presents the landlord with alternative remedies. He may choose to terminate the lease and sue for damages. *Benjamin Franklin Thrift Stores v. Jared,* 192 Wash. 252, 73 P.2d 525 (1937); *Mon Wai v. Parks,* 43 Wn.2d 562, 262 P.2d 196 (1953). As we have already noted, the plaintiff took no action following defendant's abandonment which indicated an intent to terminate the lease term. To the contrary, express declarations show a clear and unwavering intent to elect to treat the lease term as subsisting and sue for rent. Of course, a person's declarations may be belied by his actions, but defendant has not shown such contrary conduct by the plaintiff.

The lessee contends that the above quoted language in the lease not only limits the amount recoverable should the lessor elect to treat the lease as terminated and sue for damages, but also precludes the lessor from electing the alternative remedy of an action for rent reserved.

The language of the lease does not specifically tie the liquidated damages clause to a breach of the covenant to pay rent. We also note that the lease agreement does not expressly limit the landlord to an action for damages upon a breach of the agreement. The language used states that the lessor *may* cancel the lease if the lessee fails to perform. This language gives no indication that the parties intended to eliminate a possible remedy. Under these circumstances we will not infer such an intent.

To hold, as defendant urges, that a general liquidated damages clause not only limits the amount recoverable in an action for damages but also compels the lessor to seek his remedy in damages would be to hold that this court will choose between two possible inferences the one which denies a remedy to the innocent party. We are unwilling to create such a rule.

Defendant cites and relies on several of our prior cases as support for his position that plaintiff is limited to an action for damages. We have, already pointed out that *Benjamin Franklin Thrift Stores v. Jared, supra,* and *Mon Wai v. Parks, supra,* are cases wherein the landlord elected to terminate the lease, thus limiting his remedy to an action for damages. These cases do not stand for the proposition that the landlord could not recover for accruing rents if the lease were subsisting.

The case of *Pacific & Puget Sound Bottling Co. v. Clithero,* 162 Wash. 156, 298 P. 316 (1931), is not applicable to this situation. There, the landlord brought an action to terminate the lease and recover accrued rents. A liquidated damages provision in that lease was expressly made applicable to a default in the payment of rents. We held that the landlord was foreclosed from a recovery of rentals beyond the liquidated amount stipulated in the lease. We did not there hold that that lease provision for liquidated damages eliminated the landlord's right to treat the term as continuing and sue for rents accruing after the tenant's breach. That question was not before us. Neither did we hold that, should a landlord elect to terminate a lease and sue for damages, a general liquidated damages provision which neither ex-

pressly nor impliedly limited the amount recoverable for a breach of the covenant to pay rent would be applicable. The crucial factor in that case was the clear application of the liquidated damages clause under consideration to the amount recoverable in an action for damages for breach of the covenant to pay rent. The landlord was bringing just such an action.

The case of *Oldfield v. Angeles Brewing & Malting Co.,* 62 Wash. 260, 113 P. 630 (1911), is also distinguishable as it involved an agreement to enter tenancy. In such situations, the parties do not occupy the relationship of landlord and tenant, but are parties to a separate and independent contract.

1 Tiffany, Real Property § 76 at 113 (3d ed. 1939):

> The words "tenant" and "lessee" are frequently used by the courts with considerable looseness, as if equivalent in meaning. The word "lessee" should however be applied only to the person to whom the lease is originally made, while the word "tenant" is applicable to any person who holds possession under a lease, whether the original lessee or the latter's assignee. A lessee, provided he has entered under the lease, is necessarily a tenant, but a tenant is not necessarily a lessee . . .[24]

> [24]An illustration of the importance of this distinction is where one executes an instrument of lease and does not enter under it. In such case, while he is a lessee, he has never become a tenant. As one consequence, termination of the lease by the lessor does not constitute eviction, and his liability to the lessor is, in such case, for damages and not for rent.

*Oldfield* is in accordance with this distinction as the lessee had refused to take possession of the premises. *See* 32 Am. Jur. *Landlord & Tenant* § 27 (1941); 3 Thompson, Real Property § 1031, at 96 (1959).

In *Oldfield,* the plaintiff could not avail himself of the election of remedies which our law gives to a landlord because he did not occupy that position. That case is not authority for the contention made here that one who is in a position of landlord can be denied his election of remedies by a general liquidated damages clause.

This case does not raise an issue as to whether the amount recoverable in an action for rent should be affected by a rule corollary to the rule of mitigation of damages, since it is clear from this record that the landlord made every reasonable effort to relet or sell the premises. *See Wright v. Baumann,* 239 Ore. 410, 398 P.2d 119 (1965), 21 A.L.R.3d 527 (1968); Annot., 21 A.L.R.3d 534 (1968); *Martin v. Siegley,* 123 Wash. 683, 212 P. 1057 (1923). Neither are we here concerned with the effect of the landlord's subsequent use of a part of the premises, since the extent, duration and value, if any, of this use has not been shown.

Judgment affirmed.

HUNTER, C. J., HILL and ROSELLINI, JJ., and DONWORTH, J. Pro Tem., concur.

---

January 6, 1970. Petition for rehearing denied.