532 So.2d 1354 (1988)
Bernard KAPLAN, As Trustee D/B/a Northpark Commerce Center, Appellant,
v.
Thomas McCABE, et al., Appellees.
No. 88-573.
District Court of Appeal of Florida, Fifth District.
November 3, 1988.
*1355 James E. Foster and Daniel R. Matthews of Foster & Kelly, Orlando, for appellant.
Patrick A. Raley of Infantino and Berman, Winter Park, for appellees.
COBB, Judge.
This appeal involves the question of whether a three-day notice to pay rent or quit can constitute a constructive eviction.
Appellant (Kaplan) and appellee (McCabe) agreed to be equal owners of a bingo hall to be located in a warehouse owned by Kaplan.[1] The business was designated Marto Enterprises, Inc. A lease agreement was executed between the parties[2] on September 26, 1985, and was to commence on October 1, 1985, continuing for a period of five years. With the execution of the lease, McCabe paid $3,346.88 for the first month's rent and a security deposit in the same amount. McCabe guaranteed payment of the sums due under the lease.
The lease, while expressly stating that it was to become effective on October 1, 1985, had a provision whereby, in the event of a delay of construction for any reason, rent would not begin until possession of the premises could be given to the tenant or until the premises were available for occupancy. In any event, the language was clear that:
The lease term shall become effective and the lessee shall take possession of the demised premises, on the day that the certificate of occupancy is issued.
Kaplan, as part of his contribution to Marto Enterprises, was to fund a majority of the construction costs, and Kaplan's company, Eric Adams Realty and Construction, pulled the permits and was to handle the alterations involved in making the warehouse suitable as a bingo hall. The testimony varies regarding exactly how long the construction took place; however, it was not until the end of November that McCabe was given a key. Notwithstanding when construction ended, a certificate of occupancy was granted to Kaplan, as owner, on November 15, 1985, evidencing the completion of the tenant improvements and allowing use of the premises as a bingo hall.
*1356 On December 2, 1985, a letter was mailed to McCabe explaining that the rent for the months of November and December was past due and that pursuant to the lease, if the rent was not paid within five days, a ten percent penalty would be assessed.[3]
The bingo hall opened for business on December 7, 1985, but apparently did not do well during the first two weeks of operation. Subsequently, Kaplan and McCabe discussed the rent, and McCabe stated he did not have the money. On December 20, 1985, a "3-DAY NOTICE TO PAY RENT OR QUIT" was delivered to Marto Enterprises demanding Marto Enterprises pay the November and December rent or surrender possession. On December 24, 1985, a letter was sent from McCabe stating that his records revealed that rent was not past due for the bingo hall. By January 6, 1986, McCabe had vacated the leased premises.
Kaplan filed a complaint against Marto Enterprises and Mr. and Mrs. McCabe individually, alleging among other things a breach of the lease. McCabe filed a counterclaim alleging breach of contract and unjust enrichment. The trial court found that Kaplan should take nothing from Marto Enterprises or the McCabes. The trial court also made findings of fact that stated that the lease commenced in the month of January and the McCabes were wrongfully evicted from the leased premises. The McCabes were awarded damages in the amount of $21,017.34, less an adjustment for costs on rehearing.
No evidence in the record supports the trial court's finding that the lease began in January. The lease provision quoted above controls, and while the lease could have taken effect earlier than November 15, 1985, it must have taken effect on the day the certificate of occupancy was issued, or in this instance, November 15, 1985.
McCabe was also required under the lease to "take possession" of the premises when the certificate of occupancy was issued. Having failed to demand possession, McCabe cannot object on the grounds that his possession was somehow delayed. The trial court's finding of fact concerning the effective date of the lease is clearly erroneous because it fails to follow the plain meaning of the lease agreement.
The Florida Supreme Court has recognized and defined the constructive eviction defense in Hankins v. Smith, 103 Fla. 892, 138 So. 494, 495 (1931).
A "constructive eviction" is an act which although not amounting to an actual eviction, is done with the express or implied intention, and has the effect, of essentially interfering with the tenant's beneficial enjoyment of the leased premises.
Under Hankins, constructive eviction arises out of a wrongful act by the landlord "whereby the leased premises are rendered unsafe, unfit, or unsuitable for occupancy in whole, or in substantial part, for the purposes for which they were leased." 138 So. at 496.
In McCready v. Booth, 398 So.2d 1000, 1001 (Fla. 5th DCA 1981) this court cited with approval Sentry Water Systems, Inc. v. Adca Corp., 355 So.2d 1255, 1257 (Fla. 2d DCA 1978):
Underlying or implicit in all decisions is that the act of the landlord constituting the constructive eviction be wrongful, unwarranted, or unlawful. Eviction, whether actual or constructive, to be actionable must be wrongful.
Generally, abandonment of the premises within a reasonable time after a landlord's wrongful act is a necessary element of constructive eviction. Richards v. Dodge, 150 So.2d 477, 481 (Fla. 2d DCA 1963). The Richards court further stated that a tenant who alleges constructive eviction should and must give "timely notice" to the landlord of the objectionable act and "demand rectification." 150 So.2d at 484.
The majority view among the various jurisdictions in regard to a notice to quit is stated in 14 A.L.R.2d 1450, 1451 (1950):

*1357 There is some authority to the contrary, but the prevailing view would seem to be that a mere notice to the tenant to quit, followed by his vacation of the premises, is not of itself sufficient to constitute an eviction and give the tenant a right to damages. The theory being that to constitute a constructive eviction there must be some substantial interference which is injurious to the tenant's beneficial use and enjoyment of the premises.
In the instant action, Kaplan presented McCabe with a "NOTICE TO PAY RENT OR QUIT" pursuant to section 83.20(2), Florida Statutes (1985). The statutory requirements are such that a tenant is able to withhold rent, if he feels he has a valid reason, without the fear of being summarily ejected without legal process.
The notice to pay rent or quit was not proper or legally sufficient, because the rent became due when the lease commenced on November 15, 1985. This first month's rent was prepaid by McCabe. A demand for rent due must be made by the landlord or his agent, of the exact amount due, on the date it is due. Baker v. Clifford-Mathew Investment Co., 99 Fla. 1229, 128 So. 827 (1930). While mistaken information contained in a "notice" made in the good faith belief that it is true information may, in some instances, make the notice legally insufficient, the notice should not take on greater importance than the "technical defect" which it represents. Manzo v. Patch Publishing Co., 403 So.2d 469 (Fla. 5th DCA 1981).
In Hankins, it was stated that the wrongful conduct on the part of the landlord must be done with the express or implied intention of interfering with a tenant's beneficial enjoyment of the leased premises. The facts of this action make it clear that a notice to pay rent or quit, standing alone and without other coercive or abusive-type conduct on the part of the landlord, cannot serve as a basis for constructive eviction.
A notice to pay rent or quit does not give rise to a presumption that the landlord intends that the tenant should no longer enjoy the premises. When a landlord requests that a tenant pay rent, just the opposite is true. The presumption is that the landlord wishes the tenant to continue to enjoy and occupy the premises. Any other interpretation would permit a tenant who desires to avoid a lease obligation to do so when a demand for rent contains any technical defect such as the wrong date or an incorrect amount of money.
Even assuming we would recognize an improperly filled-out notice to pay rent or quit as a basis for constructive eviction, McCabe would still not carry the day; timely notice must be given to the landlord of the objectionable act and a demand for rectification must be made. Richards. Based on the facts contained in the record, there can be no wrongful or constructive eviction, and the damage award as set forth by the trial court is inappropriate.
While not the main issue on appeal, the trial court was within its discretion in excluding a July lease inasmuch as the September lease agreement was not ambiguous and appeared on its face to be the entire agreement between the parties. A provision of the September lease contains a merger clause entitled "Complete Agreement." Accordingly, we reverse the judgment below and remand for a new trial on the issue of Kaplan's damages based upon breach by McCabe and Marto Enterprises of the lease agreement commencing November 15, 1985.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
DAUKSCH and DANIEL, JJ., concur.
NOTES
[1] As trustee for Northpark Commerce Center.
[2] Martos Enterprises, Inc. was the designated tenant.
[3] Apparently, a letter requesting November's rent had been sent but was never received by McCabe.