**J.M. GEBAUER, INC., and KEPAOA DEVELOPMENT CORPORATION, Plaintiffs,**

**v.**

**AMERICAN SAMOA POWER AUTHORITY, Defendant.**

High Court of American Samoa
Trial Division

CA No. 139-00

December 7, 2001

Before RICHMOND, Associate Justice, and LOGOAI, Chief Associate Judge.
Counsel: For Plaintiffs, Katopau T. Ainu'u
 For Defendant, Roy J.D. Hall, Jr.

## OPINION AND ORDER

On November 21, 2000, plaintiffs J.M. Gebauer, Inc., ("JMG") and Kepaoa Development Corporation ("Kepaoa") filed this action against defendant American Samoa Power Authority ("ASPA") to recover damages for breach of a lease agreement between JMG and ASPA, unauthorized use of unleased adjacent area, and injuries to the leased premises. On December 27, 2000, ASPA filed its answer and counterclaim against JMG and Kepaoa to recover unpaid utility charges and the value of improvements made to the leased premises. Trial took place on July 12, 2001. Both counsel were present.

### Facts

By the written instrument dated November 5, 1997, JMG leased to ASPA the building in Nu'uuli, American Samoa, commonly referred to as the "Aiga Basket" ("the premises"), for a term of 20 years commencing on November 1, 1997, with a renewal provision of another 20 years. On or about January 27, 2000, Kepaoa assumed from JMG the lessor's rights and obligations under the lease. ASPA issued checks to either JMG or both JMG and Kepaoa to pay the rent until September 2000 when it completely stopped paying rent.

In a letter dated October 18, 2000, Kepaoa notified ASPA of the default in rent payments and demanded the problem be remedied within 30 days. ASPA, from the beginning of the lease, also used approximately 272 square feet beyond the leased premises, without paying rent for this extra space. In the October 18 letter, Kepaoa also notified ASPA that it had 30 days to remedy the lost rent for this extra space.

Without responding to the letter and without written notice, ASPA quit the premises around November 14, 2000. In the course of moving, ASPA caused substantial structural damage to the premises, which JMG and Kepaoa repaired at their own expense. ASPA acted deliberately and maliciously in causing this damage.

## Discussion

### A. Abandonment

The default clause in the lease of the premises provides JMG and Kepaoa with two options upon ASPA's default: (1) retake possession of the premises after a 10- or 30-day notice of default or (2) require that ASPA cure the lease default. Under either option, JMG and Kepaoa retain the right to charge ASPA for associated costs or damages.

■ The lease uses language of reentry rather than termination to effect cancellation of the lease. The only condition to reentry is that the lessee be given 10 days' notice in the case of financial default or 30 days' notice in the case of other default. Where a lessor's conditional notice is unambiguously conveyed, providing a definitive date of termination, it can function as a termination of the lease if its terms are not met. *Hodel Co. v. Sutherland*, 415 N.E.2d 517, 521 (Ill. 1981). A notice merely expressing a conditional retaking of leased premises upon failure to cure a default can be too indeterminative to convey intent to terminate a lease. *See Kaplan v. McCabe*, 532 So. 2d 1354, 1357 (Fla. 1988) (conditional notice to pay rent or quit premises raises presumption landlord intends for tenant to remain under terms of lease); *Ostlund v. Hendricks*, 615 P.2d 327, 330 (Or. 1980).

■ The question, then, is whether the October 18th letter, of itself or in conjunction with later actions, conveyed an intent to exercise the right to reenter. The determination relies in part on the specific language of the letter. The letter establishes a condition precedent—eviction proceedings will not be instituted until default continues for another 30 days. While a specific date is set for the beginning of proceedings, no specific date for termination is set—there is no unambiguous date by which ASPA must quit the premises. If JMG and Kepaoa intended the October 18th letter to terminate the lease, the letter would have provided a definitive date for termination, rather than the ambiguous threat of beginning proceedings. The letter conveys an intent to continue with the terms of the lease and a demand for ASPA to cure payment according to those terms, rather than an intent to terminate the lease. *See Kaplan*, 532 So. 2d at 1357.

As the letter alone did not terminate the lease, ASPA's relinquishment of the premises constitutes an abandonment of the lease. *See* 49 AM. JUR.

207

2D *Landlord and Tenant* § 250 (1995) ("Abandonment generally occurs when the lessee leaves the rented premises vacant with the clear intention not to pay rent or to be bound by the lease."). ASPA's conduct and letter of October 18, 2000, clearly indicate that it was voluntarily vacating the premises with no intent to pay rent.

B. Acceptance

■ Except to the extent the parties agree otherwise, a lessor may, upon a lessee's abandonment, (1) accept the lessee's offer of surrender and terminate the lease, leaving lessee liable only for rent accrued before the acceptance and damage caused by the abandonment or (2) attempt to lease the premises to another lessee as a means of mitigating the loss of rents, in which case the original lessee is liable for the difference between promised rent and rents obtained. RESTATEMENT (SECOND) OF PROPERTY § 12.1 (1977); *Noce v. Stemen*, 419 P.2d 450, 451 (N.M. 1966) (a lessor may enter premises which have been abandoned for the purpose of making ordinary and necessary repairs without affecting the lessee's liability for future rent); *Pague v. Petroleum Prod., Inc.*, 461 P.2d 317, 320 (Wash. 1969) (a lessor may re-enter abandoned premises to prepare them for a prospective lessee without accepting the abandonment; the abandoning lessee remains responsible for rent).

■ Whether a lessor's reentry onto the premises constitutes acceptance of surrender is a question of fact. *See Riggs v. Murdock*, 458 P.2d 115, 118 (Ariz. Ct. App. 1969) (the trier of fact must "determine whether the dominion and control exercised by the landlord was for the landlord's own benefit or for the benefit of and on behalf of the original tenant").

Here, JMG and Kepaoa argue that when they reentered the premises, they did so to prevent further damage to the building caused by ASPA's removal of fixtures, not with an intent to release ASPA from its lease obligations. However, clearly the efforts of JMG and Kepaoa were directed toward profits to be gained from new lessees—not in protecting the relationship with ASPA.

■ While preventing further damage to the premises was certainly one motivating factor for the reentry by JMG and Kepaoa, clearly they were acting for their own benefit as well. Taken in conjunction with the October 18th letter, the reentry constituted a legal reentry and retaking of the premises. Accordingly, once JMG and Kepaoa reentered for their own purposes, they in effect accepted ASPA's unambiguous surrender of the premises.

C. The 272 Square Feet

ASPA asserts that JMG and Kepaoa had positively granted permission to ASPA to use the extra 272 square feet without paying extra rent, and that it was only when Ryanny Oebauer, representing JMG and Kepaoa, and Gary Sword, representing ASPA, had a disagreement that JMG and Kepaoa demanded rent.

[6] The use of the extra 272 square feet was quite difficult to miss, and occurred from the beginning of the lease. Whether JMG and Kepaoa granted permission to use this property or not, ASPA's use was so obvious and extended that JMG and Kepaoa at the very least impliedly gave permission for ASPA's use. JMG and Kepaoa did not demand compensation for ASPA's use until October 18, 2000—nearly three years after the lease began. ASPA quit the premises before 30 days had passed after this demand. Because the use before October 18, 2000 was permissive, and no improper use took place afterward, ASPA is not liable for any rent for use of the extra 272 square feet.

D. Fixtures

 The issue of ASPA's improvements and then removal of some improvements from the premises must be assessed under the law of fixtures and improvements. An object is a fixture if it is treated as part of the premises; it may not then be removed except by the owner of the property. *See* 35 AM. JUR. 2D *Fixtures* § 2 (1995). Improvements made on real estate without the direct consent of the owner of the land interest become a part of the realty—rendering removal or destruction of the improvement an act of waste. *See* 41 AM. JUR. 2D *Improvements* § 3 (1995). A person who makes improvements on the land in the good-faith belief that the owner authorized him to build the improvements is entitled to compensation for their value. *See Leapagatele v. Nyel*, 17 A.S.R.2d 201, 204 (1990) (no entitlement to compensation where no good-faith belief landowner has given permission).

 Equity will not allow a landowner to be unjustly enriched by taking improvements a tenant constructed on his land. 41 AM. JUR. 2D *Improvements* § 3. However, ASPA did not attempt to take the improvements in such a way that left the premises in their original state. Rather, by taking apart but not completely removing the improvements, ASPA left the premises in such a condition that JMG and Kepaoa by necessity had to expend funds to make the premises rentable. JMG and Kepaoa cannot be faulted for choosing to expend funds to replace the removed fixtures rather than expending funds to tear down what was left. By leaving the premises in a state more disheveled and less valuable than they had found it, ASPA committed waste maliciously. JMG and

Kepaoa are therefore entitled to both compensatory and exemplary damages.

E. Damages

■ The acceptance by JMG and Kepaoa of ASPA's abandonment did not free ASPA from its obligations under the lease up until that point. Where the amount of rent is fixed at a definite sum, the recovery for failure to pay rents is that sum, plus interest and the costs of the suit, less any duty to mitigate. *See* 49 AM. JUR. 2D *Landlord and Tenant* § 791 (1995). ASPA has a legal obligation to pay previously unpaid rents causing the original default as well as rents between the October 18, 2000 letter and the reentry of JMG and Kepaoa. However, ASPA has established that it has paid the back rents through November of 2000, when reentry took place.

■ The destruction ASPA caused to the property upon its departure is compensable. A lessor's recovery for a lessee's waste can be measured by the diminution in the value of the property resulting from the waste. *Johnson v. Nw. Acceptance Corp.*, 485 P.2d 12, 17 (Or. 1971); 49 AM. JUR. 2D *Landlord and Tenant* § 847. Damages for a lessee's waste are also frequently measured by the cost of repairing or restoring the property to its former condition. *Johnson*, 485 P.2d at 17. There is no universal test for determining which measure of damages to apply—the method must be decided on the facts of each case. *Id.* (where injury is easily repairable, cost of repair is the preferred amount). JMG and Kepaoa have already made efforts to put the premises back in its original condition. Calculating the approximate value of the property would involve another complex factual determination which we will not undertake. Thus, we will use the cost-to-repair theory of damages. JMG and Kepaoa have established an estimate for these repairs at $21,626.26. This amount is an appropriate measure of their compensatory damages caused by ASPA. In addition, ASPA will be assessed $5,000.00 in exemplary damages.

■ ASPA counterclaims for unpaid electrical and water service and reimbursement for alleged improvements to the premises. ASPA has established the unpaid electrical and water charges at $25,000. However, ASPA's expenditures on improvements were made at its expense, under the provision in the lease for remodeling or making structural improvements, and it is therefore not entitled to recover on its claim of improving the premises in the amount of $50,000, or any other amount, upon the circumstances of the lease termination. Rather, as discussed above, ASPA maliciously caused and is responsible for the damage to the premises which JMG and Kepaoa had to repair at their own expense.

## Order

We award JMG and Kepaoa $21,626.26 in compensatory damages and $5,000.00 in exemplary damages, a total of $26,626.26, and ASPA $25,000 in relief. Accordingly, ASPA shall pay JMG and Kepaoa the net sum of $1,626.26, plus post-judgment interest on this amount at the rate of 6% per annum. The parties shall bear their respective costs of suit and attorney's fees, under the circumstances of this case.

It is so ordered.