**Max T. DEAN, Appellant,**

v.

**H. E. LACEY, Appellee.**

**No. 7017.**

Court of Civil Appeals of Texas.

Beaumont.

Jan. 23, 1969.

Renfrow, Zeleskey, Cornelius, Rogers & Berry, Lufkin, for appellant.

D. H. O'Fiel, Beaumont, McVicker & Evans, Lufkin, for appellee.

PARKER, Chief Justice.

H. E. Lacey, as Lessor, sued Appellant, Max T. Dean, as Lessee, for rentals alleged to be due under their lease contract. The trial court denied Appellant's Motion for Instructed Verdict, granted Appellee's Motion for Instructed Verdict, and rendered Judgment against the Appellant for $6,-444.35. The Appellant will be called Appellant or Dean. The Appellee will be called Appellee or Lacey.

Lacey leased a service station to Dean effective February 15, 1958, for a ten year term. The lease provided for a monthly rental of a minimum of $125.00 per month, payable monthly in advance. Dean, as Les-

see, occupied the premises and paid all rent until February 15, 1959. On that date, he assigned the lease to Taylor. Lacey, as Lessor, consented to this assignment in an instrument which provided that Dean should be "subject, however, to the payment and performance of all the agreements and covenants on the part of said Max T. Dean, in said indenture of lease contained, and all the terms thereof; it being understood that the said Max T. Dean shall answer to me for any default made in the performance of such lease by the said Jim Dale Taylor." Such consent agreement further provided that Dean in no manner would be connected with any gasoline service station other than an authorized Texas Company service station in Diboll or within a radius of two miles of Diboll during the term of such lease from Lacey to Dean and assigned to Taylor.

Diboll Development Company was the owner of the property and had leased it to Lacey on February 15, 1958, and had consented to the lease of the same by Lacey to Dean. Diboll Development Company, by instrument dated February 1, 1959, consented that H. E. Lacey assign the lease to Jim Dale Taylor, or consent to the assignment by Dean to Jim Dale Taylor of the lease.

On February 12, 1959, Lacey discovered that Dean had left the gasoline service station. The place was closed and everything moved out. Lacey admitted that Dean had paid him the rental through the time Dean actually occupied the station, amounting to $1,500.00 for a full year's rental. Thereafter, Dean paid no rental. Dean made the arrangement for Taylor to take over the station. Then Dean moved to Beaumont and went to work for Ideco. Before leaving, he sold his stock of goods to Jim Dale Taylor. After moving to Beaumont, Dean continued to reside in Beaumont and never learned that Taylor had made any default in the lease until he received a letter from Lacey dated September 30, 1959. He testified that Lacey never told him that Taylor was leaving the station.

Lacey received payment for rental from Jim D. Taylor of $270.00 from March 15, 1959, to June 15, 1959. On that date, the rent was in arrears $130.00. After Jim Dale Taylor ceased to occupy the premises, H. E. Lacey secured or obtained each tenant of such premises and the rental was paid to Lacey; the tenants were secured by Lacey to occupy the premises and pay the rental as stated, each leaving voluntarily; Lacey advertised in papers, by posters on premises, and personal solicitation to obtain tenants to occupy and pay rental on the premises. Each occupant paid rent to Lacey during the time he occupied the premises, the total rent received from them being $3,055.65.

Lacey testified that Jim Dale Taylor ceased occupying the premises on June 15, 1959. That on that date, Lacey rented the station to A. D. Redfearn, who ceased to rent December 15, 1959. He then rented to S. J. DuBose from December 15, 1959, to December 31, 1959; O. E. Rose rented January 28, 1960, and ceased to rent June 6, 1960; J. C. Rose rented June 6, 1960, and ceased to rent October 10, 1961; John Ferguson rented October 10, 1961, and ceased to rent December 31, 1961; S. J. Smith rented October 1, 1962, and ceased to rent December 31, 1962. Each occupant paid rent to Lacey during the time he occupied the premises.

After Taylor ceased to occupy the premises, Lacey admitted he had not talked in person or by telephone with Max T. Dean. In Paragraph 15 of the Lease between Lacey and Dean, it is provided: " * * * upon the termination of the lease between Diboll Development Company and H. E. Lacey, regardless of the cause thereof, this lease shall also, ipso facto, cease, terminate and be of no further force and effect."

Appellee pleaded:

"That after defendant abandoned the aforesaid leased premises plaintiff made efforts and contacted various persons to rent said premises and minimize or eliminate the amount due from defendant to plaintiff. Plaintiff received the sum of $3,055.65 from his efforts which he applied to the amount accruing and owing to him by defendant under the lease contract and its provisions. Plaintiff, in accordance with his rights under said lease contract, declared all the remaining rental installments past due and payable, and the amount now due and payable by defendant to plaintiff is $6,444.35 for which he now sues.

### VIII.

"Plaintiff has made demand that defendant pay rentals due under said lease contract and pay the sum due under the terms of said lease contract, but defendant has refused to pay same, or any part thereof. Plaintiff would further show that he has duly performed all of the conditions of said lease contract with the defendant and on plaintiff's part by him to be performed."

In Appellant's First Amended Original Answer, the pleading consisted of a general denial and:

### "II.

"On or about June 15, 1959, contending and asserting that the defendant was in arrears as to payment of rent under the lease referred to in plaintiff's petition, the plaintiff entered into and upon the premises described in said lease and repossessed said premises and evicted the defendant therefrom. The plaintiff procured other tenants as of June 15, 1959 and thereafter at all times maintained possession of the leased premises himself, either in person or by tenants of his own

choosing and selection. Thereby the plaintiff chose and elected the first prerogative given to him in Paragraph 8 of the lease, and upon plaintiff's re-entry into possession of the leased premises on June 15, 1959, the lease referred to in plaintiff's petition ceased and ended as provided for in Paragraph 8 of such lease."

The lease of February 15, 1958, provides:

### "8. REPOSSESSION BY LANDLORD

"These presents are upon this specific condition, that if Lessee does not or shall neglect or fail to perform and observe any or either of the covenants contained in this instrument which on his part are to be performed, or shall be declared bankrupt according to law, or if any assignment shall be attempted to be made of said property for the benefit of creditors, then in either of said cases Lessor lawfully may immediately or at any time thereafter, and while such neglect or default continues, and without further notice or demand, enter into and upon the said premises or any part thereof in the name of the whole, and repossess the same as of his former estate, and expel Lessee and remove his effects (forceably, if necessary) without being taken or deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for possession or for arrears of rent, and that upon entry as aforesaid the rights of Lessee in this lease shall cease and be ended; provided that if Lessee shall default in the payment of any installment of the rent, or of any other sum provided for under this lease as the same becomes due and payable, * * * * * *, then, and in any such case the entire rent for the balance of the term shall, at the option of Lessor, at once become due and payable, as if by the terms of this lease it were all payable in advance; or at

Lessor's option this lease shall become null and void."

"Mr. Max Dean, Rt. 1, Box 29B
Beaumont, Texas

Lacey wrote a letter to Max Dean, as follows:

"9–30  1959

"Lease on Service Station in Diboll
(Subject)

"Please find attached a statement for rent you owe on your lease of the service station in Diboll owned by the Diboll Developement [sic] Co.

"We have been unable to rent this station since August 1st, and have asked Diboll Developement [sic] Co. for a release from their lease so that we could release you from your lease. However we have been unable to get a release and they have notified that they want the rent as set out in the lease.

"Under the circumstances we are now calling on you to pay the $125.00 for each month that this station is not rented.

"Please send check or tell me your intentions to pay by return mail, since Diboll Developement [sic] Co. has called on two occasions asking that we send the rent.

"Yours very truly,

"H. E. Lacey"

———◆———

The statement "we have been unable to rent this station since August 1st" is misleading. The words "now calling on you" show that Lacey had changed his decision as he had not previously requested or expected Appellant to pay any further rent. In effect, Appellee, in the letter, is saying that because of his inability to rent and get a release, that he, Lacey, has changed his mind and wishes to reinstate Appellant as Lessee. On the same day, he billed Dean for the rent from August 1st through October, amounting to $375.00. This was followed by a letter to Mr. Dean dated October 30, 1959, as follows:

"October 30, 1959

"Mr. Max T. Dean
Route 1, Box 29B
Beaumont, Texas

"Dear Sir:

"Re: Lease Contract, H. E. Lacey,
Lessor, Max T. Dean, Lessee

"Mr. H. E. Lacey has referred the lease contract that you executed on February 11, 1958 to us for our consideration and necessary action pertaining thereto.

"It is our understanding that you are now in arrears in the sum of $375.00 for rental under said lease.

"Since you have vacated said lease premises and the Lessor has attempted, in your absence, to lease same without success we are now intending to hold you responsible for the past due rental as well as the future rentals due under the lease that you executed with Mr. H. E. Lacey.

"You must, within the next fifteen days, contact us if you have any desire whatsoever to try to solve this situation, otherwise, we will have no other choice but to take this matter into Court which we certainly do not wish to do.

"Unless you have contacted us on or before November 15, 1959, we will enter suit under said lease against you.

"Sincerely yours,

"DEE:mmk"

———◆———

The third paragraph of that letter is incorrect in stating that Lacey had attempted to lease the station without success. This letter was forwarded to Dean by Lacey.

Appellant has six points of error, and they are as follows:

## "POINT ONE

"The Trial Court erred in denying appellant's motion for instructed verdict because the undisputed evidence showed the lease terminated June 15, 1959, by the action of appellee in exercising his option to repossess the premises.

## "POINT TWO

"The Trial Court erred in granting appellee's motion for instructed verdict because the undisputed evidence showed the lease terminated June 15, 1959, by the action of appellee in exercising his option to repossess the premises.

## "POINT THREE

"The Trial Court erred in rendering judgment against appellant for more than the $130.00 in rentals remaining due as of June 15, 1959, because the undisputed evidence showed the lease terminated June 15, 1959, by the action of appellee in exercising his option to repossess the premises.

## "POINT FOUR

"The Trial Court erred in denying appellant's motion for instructed verdict because the undisputed evidence showed the lease terminated June 15, 1959, by the action of appellee in not calling upon appellant to answer for the default of Taylor or giving appellant notice of such default, and in renting the premises to new tenants of his own selection.

## "POINT FIVE

"The Trial Court erred in granting appellee's motion for instructed verdict because the undisputed evidence showed the lease terminated June 15, 1959, by the action of appellee in not calling upon appellant to answer for the default of Taylor or giving appellant notice of such default, and in renting the premises to new tenants of his own selection.

## "POINT SIX

"The Trial Court erred in rendering judgment against appellant for more than the $130.00 in rentals remaining due as of June 15, 1959, because the undisputed evidence showed the lease terminated June 15, 1959, by the action of appellee in not calling upon appellant to answer for the default of Taylor or giving appellant notice of such default, and in renting the premises to new tenants of his own selection."

Each and all of Appellant's Points of Error are sustained.

Appellee, as Lessor, had two options upon default, which are set forth in Paragraph 8 of the lease. Under the first option, he could retake possession of the premises and insist upon any payment of any prior rent due him at the time and the rights of Lessee ceased and ended without prejudice to the options after the word "provided." This first option did not include future rents, but only the rent in arrears in the amount of $130.00. Under the second option, at the time Appellant was in default in the payment of rent in the sum of $130.00, Appellee had the option *"then,* and in any such case, the entire rent for the balance of the term shall, *at the option of the Lessor,* at once become due and payable as if by the terms of this lease it were all payable in advance" (Emphasis ours); this Appellee did not do on June 15, 1959, but, on the contrary, affirmatively until September 30, 1959, his every action was wholly inconsistent with requesting or demanding of Appellant payment at once of the entire rent for the balance of the term.

■ South Falls Corp. v. Kalkstein, 349 F.2d 378, 384 (5th Cir., 1965) summarizes Texas law as follows:

"In Texas a lease agreement may be terminated only by the mutual consent of lessor and lessee. See, e. g., Stewart v. Basey, 241 S.W.2d 353, 358 (Tex.Civ. App.1951), aff'd 150 Tex. 666, 245 S.W. 2d 484; Barret v. Heartfield, 140 S.W. 2d 942, 944–945 (Tex.Civ.App.1940). An agreement to terminate may be inferred from the objective acts of the parties. See, e. g., Cannon v. Freyermuth, 4 S.W. 2d 84 (Tex.Civ.App.1928). Hence, there is said to be a surrender by operation of law whenever the parties have so acted that it would be inequitable for either to assert the continued existence of the lease. Therefore, if, upon an abandonment of the premises by the tenant in possession and a default in the rental obligation, the landlord re-enters and relets *for his own benefit,* the tenant's obligations will be considered terminated by operation of law. See, e. g., Flack v. Sarnosa Oil Corp., 293 S.W.2d 688, 689 (Tex.Civ.App.1956); Wheeler v. Thomas, 328 S.W.2d 891, 896 (Tex.Civ.App. 1959). The tenant's abandonment constitutes an offer to terminate which is deemed accepted by the landlord's acts inconsistent with the tenant's continued possession."

In that case, it is said, "In all of the cases cited by the appellant, there has been an actual occupation of the premises by the landlord or an actual reletting for the landlord's benefit without taking proper precautions to avoid a surrender."

■ In the instant case, there was an actual legal occupation of the premises by Lacey and an actual reletting for his benefit without Lacey taking precautions to avoid a termination of the lease as to all parties. Lacey could not choose both options. He chose the option by which the lease became null and void. Under the lease and the actions of Lacey, the lease was terminated by mutual agreement of the parties. Dean was not a wrongdoer. See Rohrt v. Kelley Manufacturing Co., 162 Tex. 534, 349 S.W.2d 95 (1961); Walling v. Christie and Hobby, 54 S.W.2d 186, 188 (Tex.Civ.App.1932, no writ); Waggoner v. Edwards, 83 S.W.2d 386 (Tex.Civ. App.1935, no writ); Wheeler v. Thomas, 328 S.W.2d 891 (Tex.Civ.App.1959, no writ); Dearborn Stove Co. v. Caples, 149 Tex. 563, 236 S.W.2d 486 (1951); Calhoun v. Kirkpatrick, 155 S.W. 686 (Tex.Civ.App. 1913, no writ).

The judgment of the trial court is reformed with judgment here rendered that H. E. Lacey do have and recover of and from Max T. Dean the sum of $130.00, only, together with interest thereon at the rate of 6% per annum from June 15, 1959, but that all costs of suit are adjudged against H. E. Lacey.