INGLESIDE PROPERTIES,
INC., Appellant,

v.

REDFISH BAY TERMINAL, Appellee.

No. 13–88–624–CV.

Court of Appeals of Texas,
Corpus Christi.

May 17, 1990.

John C. Holmgreen, Shirley Selz, Valerie Fogleman, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellant.

John S. Warren, Corpus Christi, for appellee.

Before DORSEY, UTTER and KENNEDY, JJ.

## OPINION

DORSEY, Justice.

Redfish Bay Terminal, Inc., appellee, brought suit against Ingleside Properties, Inc., appellant, for rentals due under a ten-year lease agreement. A jury found Ingleside liable for accumulated rentals under the lease. The jury also found in favor of appellant on its counterclaim that Redfish had intentionally interfered with their sublessee, Dowell–Schlumberger. However, the trial court disregarded the jury's findings that Redfish intentionally interfered with Ingleside's sublessee and entered judgment for Redfish. We reform the judgment and affirm.

Redfish leased a dock and land on the intracoastal waterway to Ingleside for a term of ten years in April, 1981, providing for monthly rentals of $16,120.00. The lease gave the tenant, Ingleside, the right to sublease, which it did in December, 1981, to Dowell for five years with an option to extend for an additional five years. Dowell agreed to pay Ingleside, in addition to the monthly rent, a payment of $3,200.00 per month for ten years. This payment was for a warehouse that Ingleside constructed on the premises at Dowell's request.

At the conclusion of its sublease in 1986, Dowell chose not to extend its term and vacated the premises. Ingleside ceased making payments to Redfish after December 1986, when Dowell vacated. In January, 1987, Redfish demanded the accrued rent from Ingleside and notified Ingleside it was not terminating the lease but would sue for rentals. Contemporaneously, Redfish demanded that Dowell pay it directly the $3,200 monthly for the warehouse.

Ingleside's primary defense to Redfish's suit was one of oral modification of the written lease, which the jury failed to find favorably to the tenant, Ingleside. The jury found that Redfish intentionally interfered with the sublease agreement between Ingleside and Dowell, but in its so doing, Redfish did not act with actual malice. The jury also found reasonable attorney fees for Redfish.

Appellant raises four points of error alleging that the trial court erred in awarding damages to Redfish because the lease was terminated as a matter of law, that the incorrect measure of damages was submitted to the jury and that the measure of prejudgment and post-judgment interest was incorrect. Additionally, appellant contends that the trial court erred in disregarding the jury findings regarding appellant's counterclaim for intentional interference with a contract.

By its first point of error, appellant argues that the trial court erred in awarding rental payments to appellee because the

lease was no longer in effect. Appellant contends that the lease was no longer in effect because appellee's use of the premises was inconsistent with the existence of a leasehold and the lease terminated as a matter of law.

■ Generally, if a tenant wrongfully abandons the leased premises and defaults in its rental obligations due under the lease and the landlord re-enters and re-lets for his own benefit, the tenant's obligations will be considered terminated by operation of law. *Harry Hines Medical Center, Ltd. v. Wilson,* 656 S.W.2d 598, 601 (Tex.App.—Dallas 1983, no writ); *Edward Bankers & Co. v. Spradlin,* 575 S.W.2d 585, 586 (Tex. Civ.App.—Houston [1st Dist.] 1978, no writ). Thus, a surrender results as a matter of law when the parties have so acted that it would be inequitable for either to assert the continued existence of the lease. *Dean v. Lacy,* 437 S.W.2d 433, 438 (Tex. Civ.App.—Beaumont 1969, no writ).

The cases in which the courts have determined that the landlord accepted a surrender of a lease as a matter of law involve acts which clearly manifest the landlord's intent to terminate the lease. *See, e.g., Williams v. Kaiser Aluminum & Chemical Sales, Inc.,* 396 F.Supp. 288, 294 (N.D. Tex.1975); *Dearborn Stove Co. v. Caples,* 149 Tex. 563, 236 S.W.2d 486, 489 (1951); *Dean,* 437 S.W.2d at 438; *Wheeler v. Thomas* 328 S.W.2d 891, 896 (Tex.Civ.App. —Beaumont 1959, no writ); *Barret v. Heartfield,* 140 S.W.2d 942, 945 (Tex.Civ. App.—Beaumont 1940, writ ref.).

In *Dearborn,* the landlord re-entered the leasehold after rejecting a lessee's attempted assignment. *Dearborn,* 236 S.W.2d at 489. Evidence established that the landlord had "spoken of the lease as if it were terminated," re-occupied the premises with his family, and given no indication of his purpose in reoccupying the premises. *Id.* The court stated that the change in possession, coupled with surrounding facts, were so inconsistent with the existence of the leasehold that a surrender occurred by operation of law. *Id.* In *Barret,* the court held that a surrender occurred by operation of law when the landlord directed the sher-

iff to "seize, and hold, and sell" property located on the leasehold which the lessor had installed pursuant to the terms of the lease. *Barret,* 140 S.W.2d at 945. The court stated that a surrender by operation of law occurred because the landlord had the sheriff remove property which was "a part of the very property leased by him to them." *Id.*

■ A troublesome question arises when the lessor's conduct is something less than a complete beneficial repossession. *See generally,* R. Schonshinski, American Law of Landlord and Tenant 673 (1980). In *Collier v. Wages,* 246 S.W. 743, 745 (Tex. Civ.App.—Waco 1922, no writ), the court set forth the following test to determine whether a resumption of possession was sufficient to effect a surrender:

> The question is whether the possession taken by him [landlord] is of an exclusive character with the intention of occupying or controlling the premises as his own to the exclusion of the tenant in case the latter desires to return; and this is ordinarily a question of fact.

Hence, to have surrender as a matter of law, the subsequent use must be substantial enough to show a re-appropriation of the premises and an intent to foreclose any future rights of the tenant in the premises. *Pague v. Petroleum Products, Inc.,* 77 Wash.2d 219, 461 P.2d 317, 319 (1970); *see also Briarwood v. Faber's Fabrics, Inc.,* 163 Mich.App. 784, 415 N.W.2d 310, 313 (1987).

■ In the instant case, the record establishes that Ingleside vacated the premises in December, 1986. In January, 1987, Redfish notified appellant that it was in default and that Redfish intended to stand on the lease and hold appellant liable for rentals under the lease. It is undisputed that Redfish did not occupy the lands or buildings of the leasehold. However, Redfish allowed others to moor vessels at the dock leased to appellant after the premises were vacated. Vessels were moored between twelve and eighteen times for periods ranging from several hours to overnight. On one occasion, appellee moored a barge at the dock for a period of time

between seven and fourteen days while a survey was conducted for Redfish's adjoining property. Additionally, some disputed evidence concerned ownership of locks placed upon the premises and the re-location of lighting on the premises in favor of another of Redfish's tenants.

Appellee's conduct in allowing the sporadic mooring of vessels alongside appellant's dock does not, as a matter of law, establish an intent on the part of Redfish to occupy and control the premises to the exclusion of appellant. Redfish expressly notified appellant that it intended to stand upon the lease and hold it liable for rentals. Thus, whether Redfish intended to accept Ingleside's surrender of the lease by its conduct could become only a question of fact given the ambiguous nature of their conduct. No jury issue was submitted whether there was a surrender and acceptance of the premises. Appellant's first point of error is overruled.

By point of error two, appellant argues that the trial court erred in applying the wrong measure of damages in calculating rentals due under the lease, in failing to determine and deduct the value of lessor's use of the premises after breach. We disagree. Generally, when the landlord declines to re-take possession after the leasehold is abandoned, the measure of damages is the contractual rentals under the lease as they become due. *Maida v. Main Building of Houston*, 473 S.W.2d 648, 651 (Tex.Civ.App.—Houston [14th Dist.] 1971, no writ). However, when the lessor elects to retake possession of the premises and re-let the premises, the measure of damages is the rentals due under the lease minus the amount realized from re-letting. *Id.* In the instant case, there were no findings that Redfish either regained possession or re-let the premises. Although it presented evidence that Redfish allowed the dock to be used after the tenant breached, Ingleside did not request an issue or present evidence of the value of that use to the landlord. Ingleside had the burden to plead and prove, by way of off-set, the value of Redfish's alleged use of the premises. *See Brown v. American*

*Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex.1980); *Cranetex, Inc. v. Precision Crane & Rigging*, 760 S.W.2d 298, 303–304 (Tex.App.—Texarkana 1988, writ denied); *Pague*, 461 P.2d at 319 (lessee has burden of proof on value of lessor's use to be credited against rentals due). Additionally, appellant argues that the trial court improperly overruled its objection to a jury question on damages. It is well-settled that the party relying upon a jury question has the burden of tendering to the trial court a proper question. *London v. Merriman*, 756 S.W.2d 736 (Tex.App.—Corpus Christi 1988, writ denied); Tex.R.Civ.P. 278. Here, appellant merely objected to appellee's failure to include an issue and did not submit a written question or instruction to the trial court. Appellant's second point of error is overruled.

By its third point of error, appellant alleges the trial court erred in disregarding the jury's finding that Redfish willfully interfered with the sublease agreement by diverting Dowell's payments, totaling $9,600.00, from Ingleside. After carefully reviewing the contentions of the parties and the record, we conclude that this point of error is not dispositive and should not be decided. Appellant, Ingleside, prays that we award it the $9,600.00. We note that the trial judge, in calculating the amount of the judgment, has credited Ingleside with $9,600.00 and properly reduced the judgment by that amount. If we should agree with appellant that Redfish had no legal justification in interfering with the contract between Ingleside and Dowell, we can grant no relief unless we sustain other points of error requiring reversal. Given our disposition of appellant's other points of error, this point is not dispositive and is overruled.

By its fourth point of error, appellant asserts the trial court erred in awarding appellee prejudgment and postjudgment interest at a rate of 2% per annum over MBank Corpus Christi's prime interest rate. Appellant maintains the prejudgment interest calculated at that rate is improper because pleading does not support such a rate and no evidence shows

MBank Corpus Christi's prime interest rate. Regarding the post-judgment interest, appellant maintains that an award based on a floating or uncertain rate nullifies the judgment as uncertain and indefinite. Appellee agrees that the inclusion of a post-judgment rate to be computed by an indefinite standard is improper and moves the Court to reform the judgment to reflect a post-judgment interest rate of 10% per annum, the rate in effect upon the date of entry of the judgment. We agree the rate is incorrect and reform the judgment to reflect post-judgment interest at the rate of 10% per annum.

Appellee Redfish prayed that it is entitled to recover legal interest under the provisions of Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987). It prayed for general relief as well as "legal" interest on the various amounts of damage.

Article 5069–1.03 states:

When no specified rate of interest is agreed upon by the parties, interest at the rate of 6% per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth day from and after the time when the sum is due and payable.

The general rule is that plaintiffs are required to plead for prejudgment interest sought at common law as an element of damage, while statutorily authorized interest on a contract claim may be predicated on a prayer for general relief. *Benavidez v. Isles Construction Co.*, 726 S.W.2d 23, 25 (Tex.1987). Here, appellee prayed specifically for statutory interest. Since no pleadings support the award of interest under the contract, allowing that interest was error. *Benavidez*, 726 S.W.2d at 25; *Republic Nat. Bank v. Northwest Nat. Bank*, 578 S.W.2d 109, 116–117 (Tex. 1978). Appellee is entitled to recover prejudgment interest at the statutory rate of 6%. *See* Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987). Appellant's fourth point of error is sustained.

Appellant's fifth point of error seeks a reversal of the award of attorney's fees in the event this Court should reverse the judgment of the trial court. Since we do not reverse the trial court's judgment, we overrule appellant's fifth point of error.

The judgment is reformed to reflect prejudgment interest from June 1, 1988, to the date of judgment, August 15, 1988, in the sum of $4,208.40 and post-judgment interest from the date of judgment at a rate of 10%. As REFORMED, the judgment of the trial court is AFFIRMED.

UTTER, J., not participating.