Opinion issued August 3, 2021



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-20-00324-CV

_____

**CASSELSCO, INC., Appellant**

**V.**

**FOUZIA IKRAM ALVI, INDIVIDUALLY AND D/B/A SUPER KOOL KIDZ PRESCHOOL, Appellee**

---

**On Appeal from County Civil Court at Law No 3**
**Harris County, Texas**
**Trial Court Case No. 1141937-101**

---

## MEMORANDUM OPINION

Appellant, Casselsco, Inc. is the former commercial landlord of Fouzia Ikram Alvi, individually and d/b/a Super Kool Kidz Preschool (Alvi). Alvi sued Casselsco for (1) breach of implied warranty of suitability, (2) violating Texas Property Code sections 93.005 and 93.011 by acting in bad faith in withholding her security deposit

and in failing to give her a written accounting to show why the security deposit was retained, and (3) violating provisions of the Texas Business and Commerce Code by filing assumed-name designations that belonged to Alvi.

The trial court granted summary judgment in Alvi's favor, implicitly determining that Alvi had, as summary-judgment movant, conclusively proven all elements of her causes of action. The summary judgment (1) rescinded the commercial lease agreement between the parties based on Alvi's claim that Casselsco had breached its implied warranty of suitability, (2) awarded Alvi statutory damages and attorney's fees based on her Property Code claims, and (3) ordered Casselsco to withdraw the assumed-name filings for violating the Business and Commerce Code. In one issue with two sub-points, Casselsco contends that the trial court erred by granting summary judgment in Alvi's favor on her claim of breach of implied warranty of suitability and on her Property Code claims. Casselsco does not challenge the portion of the summary judgment related to Alvi's Business and Commerce Code claim.

We affirm in part, reverse in part, and remand for further proceedings.

## Background

On April 15, 2019, Alvi, acting individually and doing business as Super Cool Kidz Preschool, signed a commercial lease agreement (the Lease) with Casselsco to rent a building to use as a daycare. When she signed the Lease, Alvi paid Casselsco

2

a $9,000 security deposit. The Lease's term was from April 22, 2019, until April 12, 2024. The monthly rent was $3,000.

On May 1, 2019, Alvi took possession of the building and began to prepare it for opening her daycare. Alvi detected the odor of mold and retained Dolphin Environmental Consultants to conduct a mold assessment, which Dolphin conducted on May 22, 2019. Dolphin did a visual inspection of the premises, collected surface samples, and tested the moisture levels in the building.

Dolphin produced a written report containing its findings of the mold assessment and its recommendations. In the report, Dolphin stated that "the affected area" was in the building's five classrooms, which had "visible potential mold on the carpet and walls." Dolphin stated in the report that it had been "informed [that] there was a previous roof leak that was allegedly repaired." It had also been informed that "the HVAC system had been turned off for several days." Dolphin noted that the temperature and relative humidity levels [in the build] were elevated." It determined that "[t]he interior average Temperature readings in the SW Room and NE Room was 82° Fahrenheit and [was] not acceptable." Dolphin also found that "the average Relative Humidity readings was 75% and [was] not acceptable." It concluded that "both readings are not within good Indoor Air Quality ranges."

Testing of the carpet in two of the classrooms indicated high levels of mold growth. Testing of one of the walls in a classroom indicated medium to high mold

3

levels. Dolphin made recommendations for abating the mold, which included replacing the carpeting and wainscoting in the classrooms and cleaning the building's surfaces. Dolphin indicated that the work could be done by a general contractor.

On July 1, 2019, Alvi informed Casselsco that she was rescinding the Lease, and later testified in an affidavit that she surrendered the building back to Casselsco on that date. According to Alvi, Casselsco told her that it would release her from the Lease if she paid six-months rent or if she forfeited her security deposit. Alvi refused both options.

On July 26, 2019, Alvi had Dolphin perform a second mold assessment. The assessment included sampling the air inside the building. Dolphin's report for the second assessment stated that probable mold was visible on the HVAC vents and filters. The report noted "highly elevated raw mold spore counts" of certain mold types in one of the classrooms. Testing detected two other mold types that should not be present in an interior air space. The report recommended that the building not be occupied by the daycare until the "airborne mold spores could be reduced to an acceptable level."

On August 16, 2019, Alvi's attorney, C. Cammack, sent a demand letter to Casselsco's registered agent by certified and regular mail. In the letter, he stated that Alvi "had no choice but to surrender the leased premises back to Casselsco, Inc. on

4

July 1, 2019 based on the significant presence of mold in the premises." Cammack also notified Casselsco that, "[b]y her surrendering the premises back to you on July 1, 2019, my client [Alvi] deems the lease as rescinded." Cammack demanded that Casselsco return Alvi's security deposit to her by August 30, 2019. On August 24, 2019, Cammack sent another letter to the registered agent, stating that the August 16 letter had been returned to his office. Cammack enclosed the August 16 letter and sent the letter to Casselsco's registered agent at three alternate addresses.

Casselsco did not return Alvi's security deposit. In October 2019, Alvi sued Casselsco. Her amended petition (the live pleading here) asserted claims against Casselsco for violating Property Code sections 93.005 and 93.011, alleging that Casselsco had acted in bad faith when it failed either to return her security deposit or to provide a written, itemized accounting of the security-deposit deductions within 60 days after she surrendered possession of the premises. *See* TEX. PROP. CODE §§ 93.005(a), 93.011. As statutorily permitted damages, Alvi sought to recover three times her $9,000 security deposit, plus $100, and her attorney's fees. *See id.* § 93.011(a) ("A landlord who in bad faith retains a security deposit in violation of this chapter is liable for an amount equal to the sum of $100, three times the portion of the deposit wrongfully withheld, and the tenant's reasonable attorney's fees . . . .").

Alvi also asserted a claim for breach of implied warranty of suitability. Based on that claim, she sought recission of the Lease.

Alvi further claimed that Casselsco had violated Business and Commerce Code sections 71.153 and 71.201 by filing an assumed-name certificate for the names "Super Kool Kidz" and "Super Kool Kidz Preschool" with the Texas Secretary of State's Office. *See* TEX. BUS. & COM. CODE §§ 71.153, 71.201. Alvi alleged that Casselsco had filed the names "in a bad faith, fraudulent effort to prevent [her] from using same [assumed business names] in Harris County, Texas." Alvi asserted that the Business and Commerce Code required Casselsco to withdraw the assumed-name filing.

Casselsco answered the suit and filed a counterclaim against Alvi. Casselsco asserted a breach-of-contract claim, alleging that Alvi had breached the terms of the Lease. It also requested a declaratory judgment, seeking a determination that Alvi had a duty to fulfill her obligations under the Lease, failed to do so, and had breached the Lease. Casselsco sought to recover "the rental amount for the entirety of the [L]ease agreement, damages and costs," plus its attorney's fees.

Alvi moved for summary judgment. She asserted that she was entitled to summary judgment as a matter of law on her claims against Casselsco for violating Property Code sections 93.005 and 93.011, for breaching its implied warranty of suitability, and for violating Business and Commerce Code sections 71.153 and

6

71.201. In support of her motion, Alvi offered (1) her own affidavit, (2) the Lease, (3) Dolphin's mold assessment reports, (4) Cammack's demand letters to Casselsco, (5) Alvi's assumed-name certificate, and (6) records from the Secretary of State. To support her requested attorney's fees, Alvi offered Cammack's affidavit testimony along with an itemized time sheet showing the specific tasks Cammack had performed, the amount of time he had spent on each task, and his hourly rate.

Casselsco responded to Alvi's motion for summary judgment. Casselsco "voluntarily grant[ed] [Alvi's] requested relief" with respect to her claim that Casselsco had violated Business and Commerce Code sections 71.153 and 71.201. Casselsco agreed to file "statements of abandonment" with the Secretary of State's Office regarding Alvi's assumed business names.

Casselsco otherwise contested Alvi's motion for summary judgment. It asserted that there was a genuine issue of material fact with respect to Alvi's claim for breach of implied warranty of suitability. Casselsco relied on the affidavit of its property manager, C. Schulze, to show that Alvi had verbally agreed to a disclaimer of the implied warranty of suitability. Casselsco also claimed that Schulze's affidavit established that Alvi had waived the implied warranty by assuming "responsibility for routine maintenance, such as ensuring that climate control of the premises was being properly used." Casselsco claimed that, because there was no breach of implied warranty, Alvi had no right to rescind the Lease.

Casselsco further asserted that Alvi had failed to meet her summary-judgment burden regarding her claim that Casselsco had violated Property Code sections 93.005 and 93.011 by neither returning her security deposit nor providing a written accounting to Alvi. Casselsco pointed to Schulze's affidavit, asserting that Casselsco had provided Alvi a verbal accounting of why the security deposit was retained.

Alvi filed objections to portions of Schulze's affidavit. Much of Schulze's affidavit pertained to conversations between her and Alvi, and Alvi raised hearsay (and other) objections to the affidavit.

The trial court conducted a hearing on Alvi's motion for summary judgment. At the hearing, the trial court heard the parties' arguments regarding Alvi's motion and regarding Alvi's objections to Schulze's affidavit. In a signed order, the trial court granted all Alvi's objections to Schulze's affidavit. This included sustaining the objections to the portions of Schulze's affidavit detailing the conservations between Alvi and Schulze, which Casselsco relied on to support its response.

The trial court signed an interlocutory order granting Alvi's motion for summary judgment. Alvi then moved to sever her adjudicated claims against Casselsco from Casselsco's still pending counterclaim against her. The trial court signed an order granting Alvi's motion, severing her adjudicated claims against Casselsco into a new separate case and assigning it a new cause number.

In the severed cause, the trial court also signed a "Final Judgment," which granted the same relief as had been granted in the interlocutory summary-judgment order. In the judgment, the trial court stated that, "after considering [Alvi's motion for summary judgment], examining the pleadings, affidavits and summary judgment evidence," the trial had determined "that no genuine issue of material fact existed as to [Casselsco's] liability or [Alvi's] damages." The court determined that Alvi was "entitled to a Summary Judgment on all of [her] claims as a matter of law, including [her] causes of action for breach of the implied warranty of suitability, violations of Sections 93.005 and 93.011, Texas Property Code, and violations of Sections 71.153 and 71.201, Texas Business & Commerce Code." The trial court stated that it had "severed such adjudicated claims from a breach of contract claim and Declaratory Judgments Act claim brought by [Casselsco]" against Alvi "resulting in" the creation of new cause number and a new case.

In the judgment, the trial court "issued a mandatory injunction, commanding [Casselsco] to withdraw from the Texas Secretary of State's records its assumed name designations of 'Super Kool Kidz Preschool' and 'Super Kool Kidz.'" The trial court also ordered that the Lease was "rescinded, effective July 1, 2019, due to Casselsco, Inc.'s breach of the implied warranty of suitability." On Alvi's claim that Casselsco had violated Property Code sections 93.005 and 93.011 by failing to return her security deposit or to provide a written accounting of the deposit, the trial court

9

awarded Alvi (1) $27,100 in statutory damages (that is, three times her $9,000 security deposit, plus $100), (2) $4,500 in attorney's fees for the trial court proceedings, and (3) a total of $15,000 in conditional appellate attorney's fees. In its final paragraph, the judgment stated that it disposed "of all parties and all claims and [was] appealable." Casselsco now appeals the summary judgment rendered in the severed cause.[1]

---

[1] Given this Court's precedent regarding subject-matter jurisdiction over appeals from orders in severed cases when claims are still pending between the parties in the original cause, we are compelled to take judicial notice that the trial court has rendered a take-nothing final judgment in the original cause against Casselsco on its counterclaim against Alvi, which has disposed of all claims between Alvi and Casselsco. *Cf. Blomstrom v. Altered Images Hair Studio*, No. 01-19-00456-CV, 2020 WL 6065437, at *1 (Tex. App.—Houston [1st Dist.] Oct. 15, 2020, no pet.) (mem. op.) (citing this Court's precedent, panel majority held this Court lacked subject-matter jurisdiction over appeal from order granting summary judgment in appellee's favor and severing appellee's claims against appellant into new cause because order was not a final judgment, despite finality language in order, given that counterclaim by appellant against appellee remained pending in trial court under original cause number); *id.* (Kelly, J., concurring) (disagreeing that order was not final, appealable judgment because it contained finality language, but recognizing that "[w]e are constrained by the doctrine of horizontal *stare decisis* to follow . . . erroneous precedent"); *see* TEX. R. EVID. 201(b)(2) ("The court may "judicially notice a fact that is not subject to reasonable dispute because it: . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."), 201(c)(1) (providing court "may take judicial notice on its own"); *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 24 (Tex. 2012) (citing Rule 201 and taking judicial notice of relevant facts outside record to determine jurisdiction). Casselsco also informs us, in the "Statement of the Case" section of its brief, that the trial court granted summary judgment in Alvi's favor on Casselsco's counterclaim in the original cause, thus disposing of all claims between the parties.

## Summary Judgment

In one issue with two sub-points, Casselsco contends that the trial court erred by granting summary judgment in Alvi's favor on her claim for breach of implied warranty of suitability and on her claim for violating Property Code sections 93.005 and 93.011.

### A.    Standard of Review

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015).

When, as here, the plaintiff moves for summary judgment, she must conclusively prove all elements of her cause of action as a matter of law. *See Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *FP Stores, Inc. v. Tramontina US, Inc.*, 513 S.W.3d 684, 690 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). A matter is conclusively established if reasonable minds could not

differ about the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

If a movant meets her burden of establishing each element of the claim on which she seeks summary judgment, the burden then shifts to the nonmovant to disprove or raise a genuine issue of material fact as to at least one of those elements. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). Evidence raises a genuine issue of fact if reasonable jurors could differ in their conclusions considering all the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

**B.    Property Code Claims**

In its first sub-point, Casselsco challenges the summary judgment on Alvi's claims under Property Code sections 93.005 and 93.011. Casselsco focuses its challenge to a single element of those claims. Specifically, Casselsco asserts that Alvi failed to conclusively prove that she "surrendered" possession of the premises.

Property Code section 93.005 provides: "The landlord shall refund the security deposit to the tenant not later than the 60th day after the date the tenant *surrenders* the premises and provides notice to the landlord or the landlord's agent of the tenant's forwarding address . . . ." TEX. PROP. CODE § 93.005(a) (emphasis added). Section 93.011 provides a commercial tenant two distinct causes of action when a tenant seeks the return of its security deposit. *Id.* § 93.011; *Zhang v. Cap.*

12

*Plastic & Bags, Inc.*, 587 S.W.3d 82, 93 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). The first cause of action arises from the landlord's bad faith retention of the security deposit. *Id.* § 93.011(a). The second arises from the landlord's bad faith failure to account for the security deposit. *Id.* § 93.011(b). Here, Alvi alleged both.

If the tenant shows that the landlord failed to refund the security deposit or provide a written accounting within 60 days after the tenant *surrenders* possession of the premises, then it is presumed that the landlord acted in bad faith. *Id.* § 93.011(d). The burden then shifts to the landlord to rebut the presumption *FP Stores, Inc.*, 513 S.W.3d at 693. If the landlord fails to offer rebutting evidence, its bad faith is established as a matter of law. *Id.*

In its brief, Casselsco challenges the summary judgment on Alvi's Property Code claims by contending that Alvi failed to conclusively prove that she "surrendered" possession of the premises. Casselsco asserts that the summary-judgment evidence raised fact issues on this point. Because Casselsco limits its challenge to this ground, we likewise limit our analysis to determining whether the trial court could have properly found that the summary-judgment evidence conclusively showed that Alvi surrendered the premises. *Cf. Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015) ("A court of appeals commits

13

reversible error when it sua sponte raises grounds to reverse a summary judgment that were not briefed or argued in the appeal.").

"Surrender is defined as giving up the tenancy to the landlord so that the tenancy and the rights or interests of the parties thereunder are extinguished by mutual agreement." *Jordan v. Schwing*, No. 01-03-00008-CV, 2004 WL 1351409, at *3 (Tex. App.—Houston [1st Dist.] June 17, 2004, no pet.) (mem. op.) (citing *Four Bros. Boat Works, Inc. v. S & SF, Inc.*, 55 S.W.3d 12, 16 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). Here, there was no mutual agreement regarding the termination of the tenancy. However, a surrender may also occur by operation of law. *See id.*; *Ingleside Prop., Inc. v. Redfish Bay Terminal*, 791 S.W.2d 217, 219 (Tex. App.—Corpus Christi 1990, no writ).

For instance, a surrender by operation of law may result by the tenant's abandonment of the premises and by the landlord's re-entry. *Ingleside Prop., Inc.*, 791 S.W.2d at 219; *Cavalcade Oil Corp. v. Samuel*, 746 S.W.2d 842, 844 (Tex. App.—El Paso 1988, writ denied) (citing *Dearborn Stove Co. v. Caples*, 236 S.W.2d 486, 489 (Tex. 1951)); *see Jordan*, 2004 WL 1351409, at *3. A surrender results as a matter of law when the parties have "so acted that it would be inequitable for either [the tenant or the landlord] to assert the continued existence of the lease." *Ingleside Prop., Inc.*, 791 S.W.2d at 219. "[T]o have surrender as a matter of law, the subsequent use must be substantial enough to show a re-appropriation of the

14

premises and an intent to foreclose any future rights of the tenant in the premises." *Id.*

In its brief, Casselsco contends that, contrary to Alvi's statement in her affidavit that she "surrendered the commercial building back to [Casselsco] on July 1, 2019," there is a material fact issue regarding whether Alvi surrendered possession. Casselsco points to Alvi's summary-judgment evidence showing that Alvi had Dolphin perform a second mold assessment of the premises on July 26, 2019, indicating that she still had access to the property at that time. In its brief, Casselsco asserts, "The fact that [Alvi] ordered another mold report after apparently providing notice of termination of the lease, creates a fact question that should have precluded summary judgment."

Had that been the only summary-judgment evidence, we would be inclined to agree with Casselsco. However, Schulze testified in her affidavit—offered by Casselsco in support of its response—that the building had been "rented out as office space with no reported problems."[2] In other words, the evidence showed that, after Alvi left the premises, Casselsco had taken possession of the property and re-let it to new tenants. Thus, the evidence established that Casselsco had engaged in a "subsequent use" of the premises that was "substantial enough to show a re-

---

[2] This statement was contained in a portion of Schulze's affidavit not objected to by Alvi.

15

appropriation of the premises and an intent to foreclose any future rights of [Alvi] in the premises." *See Ingleside Prop., Inc.*, 791 S.W.2d at 719.

We conclude that the summary-judgment evidence was sufficient to conclusively establish that Alvi surrendered possession of the premises by operation of law; that is, given the evidence, reasonable minds could not differ as to that conclusion. *See City of Keller*, 168 S.W.3d at 816. We hold that the trial court did not err when it granted summary judgment in favor of Alvi on her Property Code claims and awarded her statutory damages and attorney's fees based on those claims. *See* TEX. PROP. CODE § 93.011; *see also Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, L.L.P.*, 499 S.W.3d 169, 177 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding appellate court may affirm traditional summary judgment if, after submission of evidence by nonmovant, record establishes movant's right to traditional summary judgment even if movant's evidence, by itself, does not establish movant's right to traditional summary judgment).

We overrule Casselsco's first sub-point.

## C. Breach of Implied Warranty of Suitability

"Commercial real estate landlords impliedly warrant that their premises are suitable for the tenants' intended commercial purposes." *Gym–N–I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 906 (Tex. 2007). In its second sub-point, Casselsco asserts that the trial court erred by granting summary judgment on Alvi's claim that

16

Casselsco had breached its implied warranty of suitability and in concomitantly ordering the Lease rescinded. To establish a breach of implied warranty of suitability, "a lessee must show that a latent defect in the facilities existed at the inception of the lease, that the facilities were vital to the use of the premises for the intended purposes, and that the lessor failed to repair the defect." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 340 (Tex. 2011).

Among its grounds for reversal, Casselsco contends that Alvi failed to offer sufficient summary-judgment evidence to conclusively establish each element of her claim, including establishing that the mold was a "latent defect." A latent defect is one not discoverable by a reasonably prudent inspection of the premises at the inception of the lease. *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 503 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Alvi stated in her affidavit that she signed the Lease on April 15, 2019, and took possession of the premises on May 1, 2019. She testified that, during the months of May, June, and July, she "detected on my own the smell of mold within the building," prompting her to hire Dolphin to conduct a mold assessment. In its first report, Dolphin indicated that, during its May 26 mold assessment, potential mold was visible on the carpeting and on walls of the five classrooms in the building. Testing of the carpet in two of the classrooms indicated high levels of mold growth.

17

And testing of the wall of one classroom indicated medium to high mold levels. Based on the mold levels, Dolphin recommended abatement of the mold.

In short, Alvi's evidence showed that about one month after she signed the Lease, the mold was not only discoverable by an inspection, but it was also detectable by smell and by sight. Thus, her evidence did not conclusively establish that the presence of mold in the building was a latent defect, a necessary element of her claim.[3] *See Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 340; *see also B & H Aircraft Sales, Inc. v. Engine Components, Inc.*, 933 S.W.2d 653, 656 (Tex. App.—San Antonio 1996, no writ) (concluding that inadequate fire extinguishers, hole in wall, improper banister on stairway, and existence of chemicals on premises were not latent defects and that allegations in affidavit that there were "certain deficiencies in the electrical wiring and plumbing" were not alone sufficient to show latent defect). Alvi's evidence also did not necessarily establish that the mold was present at the inception of the Lease, that is, when she signed the Lease on April 16. *See Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 340; *B & H Aircraft Sales, Inc.*, 933

---

[3]     We make no determination whether mold is a "defect" for purposes of a breach of implied warranty of suitability claim. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 340 (Tex. 2011) ("While Italian Cowboy characterizes the defect as the presence of the odor itself, we agree with Prudential that the proper analysis of the defect in this particular case must inquire into the cause of the odor because this is the condition of the premises covered by the duty to repair.").

S.W.2d at 656 (concluding that "there [was] nothing in [party's] affidavit to indicate that . . . deficiencies were not discoverable prior to the inception of the lease").

Viewing the summary-judgment evidence as required, we conclude that Alvi did not conclusively establish her claim for breach of implied warranty of suitability. *See Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 340. We hold that the trial court erred by granting summary judgment on Alvi's claim for breach of implied warranty of suitability and in rescinding the Lease based on that claim.

We sustain Casselsco's second sub-point.

## D.    Unchallenged Claim

Casselsco does not challenge the portion of the summary judgment "commanding [it] to withdraw from the Texas Secretary of State's records its assumed name designations of 'Super Kool Kidz Preschool' and 'Super Kool Kidz,'" based on the trial court's grant of summary judgment on Alvi's Business and Commerce Code claim. Accordingly, we affirm the portion of the summary judgment rendered on that claim. *See Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex. 2001) (per curiam) (indicating appellate court should affirm trial court's summary judgment on unchallenged claims); *see also Ontiveros v. Flores*, 218 S.W.3d 70, 71 (Tex. 2007) (per curiam) (holding that plaintiff waived error on appeal as to claims for tortious interference with contract, conspiracy, conversion, and fraud by failing to challenge trial court's summary judgment on those claims).

19

## Conclusion

We reverse the portions of the trial court's judgment that grants summary judgment on the implied-warranty-of-suitability claim and rescinds the Lease based on that claim, and we remand that claim for further proceedings. We affirm the remainder of the judgment.

Richard Hightower
Justice

Panel consists of Justices Kelly, Landau, and Hightower